BAYONNE BUILDING AND LOAN ASSOCIATION

v.

EMILY A. WILLIAMS et al.

[Decided January 13th, 1899. Filed June 10th, 1899.]

1. A materialman furnished materials to a contractor, which the latter used in the construction of a building erected by him under contract with the owner, and when the materialman was entitled to payment he accepted an order from the contractor, drawn by him on the owner, for the amount due him, to be paid out of the contract price, which was not yet due.—*Held*, that the transaction was not forbidden by the section of the Mechanics' Lien law which forbids advance payments nor by the ruling of the court of errors and appeals in *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413*, and that the order entitled the holder to stand upon an equal footing with the holders of stop-notices, given under the third section of the act.

2. The same materialman furnished materials to a subcontractor, under the same principal contractor, and obtained from the contractor an order on the owner for the amount due him from the subcontractor, to be paid out of the contract price, which was not yet due.—*Held*, that the transaction was within the section of the act forbidding advance payments, as construed in *Slingerland* v. *Binns*, because the materialman was not entitled, under the third section of the act, to make a demand for payment of the contractor and give a stop-notice to the owner.

3. Under the decision in *Slingerland* v. *Binns* the several holders of stop-notices stand on an equal footing, without regard to the date of service of their several notices.

On bill of interpleader. Heard on pleadings and proofs taken in open court.

*Mr. De Witt Van Buskirk,* for the complainant.

*Mr. James Benny,* for the defendants Booth & Brother.

*Mr. Elmer W. Demarest,* for the defendants Oliver, Beardsley, Conklin and Chesterfield.

*Mr. Allan Benny,* for the defendants Cooney & Gilbertson.

PITNEY, V. C.

The complainant loaned money to the defendant Williams, to enable her to build a house on premises owned by her, and she gave complainant a mortgage, to secure the same in advance of the payment, the understanding being that the complainant was entitled to have the money appropriated to the payment of the contract price of the building to be erected. It was erected by the defendant Stanbrough under a written contract between him and the defendant Williams.

Before the last payment came due divers stop-notices were served on Miss Williams, under the third section of the Mechanics' Lien law, by laborers and materialmen, for labor done upon and materials furnished to the building; and besides these notices, three orders were drawn by Stanbrough upon Miss Williams, in favor of two of his creditors.

In that situation of affairs the complainant filed this bill, making all persons interested parties defendant, and asking for directions as to the application of the last payment.

Miss Williams and the contractor, Stanbrough, did not answer, but in open court admitted that the amount mentioned in the bill was the true balance due upon the contract, and no part of it is claimed by Stanbrough. This was also admitted by all the other defendants, and it appears that the sum in question is insufficient to pay all the claims upon it; so that the contest is entirely between the defendants.

The amount due each of the defendants was also admitted, and, in effect, the only seriously disputed fact in the cause was as to the precise date when the building was finished.

The bill was filed on the 2d of July, 1897, and some stop-notices were served after that.

In point of date and character, the various claims are as follows :

*First.* Order drawn by Stanbrough, the contractor, upon Miss Williams, the owner, in favor of *A. W. Booth & Brother,* for $797, dated and served May 1st, 1897. It expresses on its face that it is drawn against the final payment due upon the contract.

The consideration of this order was not proven ; that is, Booth & Brother declined to go into proof as to how much of it was in payment of materials furnished by them to Stanbrough for use in Miss Williams' building, and elected to stand upon it as an order given in payment of a general balance of account due from Stanbrough to them.

*Second.* Order dated May 1st, drawn by Stanbrough upon Miss Williams in favor of *George W. Conklin,* for $109.93, for hardware, &c., furnished to the house in question for Stanbrough, the contractor, and directed to be deducted from any amount due from Miss Williams to Stanbrough. This was served on May 1st, but after the order of Booth & Brother.

*Third.* A stop-notice under the third section of the Mechanics' Lien law, dated and served May 12th, 1897, given by *Cooney & Gilbertson* to Miss Williams, for the sum of $306, for mason work and materials furnished. This notice is in proper form, and is based upon a demand of payment and refusal thereof previously made by Cooney & Gilbertson upon Stanbrough, the contractor.

*Fourth.* A stop-notice dated and served June 3d, given by *Frank Beardsley* to Miss Williams, for the sum of $38.82, based upon a demand of payment on and refusal by Stanbrough for labor and materials done and furnished upon his request in erecting the stairs for the building.

*Fifth.* A stop-notice dated and served June 12th, 1897, by *William C. Oliver*, plumber, for the sum of $360, for work and

materials done for the building, based upon a proper demand of payment upon and refusal by Stanbrough.

*Sixth.* An order dated and served June 24th, 1897, drawn by Stanbrough on Miss Williams in favor of *George W. Conklin*, for $36.19, for paints and oils used in painting the building, and directed to be paid out of the last payment due.

These materials were furnished by Conklin to Chesterfield, a subcontractor for the painting under Stanbrough, and the amount of this order is included in a stop-notice of Chesterfield for painting, and paints and oils furnished to the building under contract between him and Stanbrough, which is the next, and

*Seventh.* Namely, a stop-notice of *William S. Chesterfield,* served August 11th, 1897, for $125, for the painting contract on the house. This amount includes $36.19 for materials purchased by Chesterfield from Conklin, and covered by Conklin's second order of June 24th, 1897.

Conklin having been advised of the decision in *Slingerland* v. *Binns,* served, on March 11th, 1898, long after the bill was filed, a stop-notice for the amount included in his two orders.

Some question was raised as to whether Cooney & Gilbertson's notice was served before the payment was actually due from the contractor. I am satisfied, upon examining the evidence carefully, that it was not prematurely served. The evidence of Messrs. Cooney & Gilbertson, and their solicitor, Mr. Benny, as to the time when the masonwork was finished, is quite satisfactory and is not overcome by inferences to be drawn from the architect's letter of May 17th, relied upon to show the contrary. Neither that letter nor any others written by the architect, fixes any date upon which he visited the building.

With regard to the time when the building was actually finished by the contractor, the evidence is not at all satisfactory and does not furnish an easy solution of that question. The painter swears that he finished his work on June 13th, 1897, and it was conceded that his was the last work to be done. The final certificate by the architect was given on July 7th, and its delay was due, so far as I can find in the evidence, only to the fact that the contractor had omitted to set up in the windows of

the attic some metallic mosquito-net frames which were included in the contract. Those were finished in his shop and painted about June 13th, a few days before they were placed in, and the time when they were actually placed in the house is not easily determined. The architect never did see them there, and never was inside of the building after some time prior to the 17th of May. At that time the building was substantially completed, except putting in some partitions in the cellar and making a door in the stairway, and some ceiling. He did, indeed, write a letter on May 17th to the contractor, calling his attention to some few matters, and the contractor swears that, in two or three weeks or a month afterwards, he finished the building completely, and it clearly appears that he made claim to that effect upon the architect as early as June 25th. The architect visited the house after that date for the purpose of inspection, but did not enter it by reason of its being occupied by tenants, and on July 2d wrote to Miss Williams that he would give the final certificate whenever she was satisfied, and, hearing from her to that effect, gave such certificate on July 7th.

I am satisfied that the building was substantially finished as early as the 25th of June, 1897, and fix that as that date. I think little weight is to be given to the architect's evidence and certificate, not only on account of the indefiniteness of his evidence, but because the only person interested in having the building finished was Miss Williams. She had already rented it, and it was occupied by tenants, as to one part, during the month of May, and as to the other part, during the month of June, so that the rent was going on. The fact that no money was coming to the contractor was ascertained some time before that, because the bill was prepared and filed on the 2d of July, 1897, so that no one was particularly interested in hastening the technical completion of the building.

Finding June 25th as the date when the building was completed, the result, as I interpret the decision in *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413,* is to give precedence to all the stop-notices served before June 25th over the order of Booth & Brother and those of Conklin, unless an exception should be

made in favor of either or both Conklin's orders by reason of their having been given for materials furnished to the building.

Without giving the precise figures, the result is that all the stop-notices served before June 25th will be paid, and leave a sum of money which is not sufficient to pay both Booth & Brother and Conklin. So that the contest is between the two last named; and the question is whether or not Conklin, by reason of his orders having been given for materials furnished, is entitled to stand on an equal footing with the holders of the stop-notices. This brings us to the question of law in the case.

I am of the opinion that the order of May 1st, given to Conklin, should stand on an equal footing with the stop-notices and should have precedence over Booth & Brother for the following reasons:

*First.* It was given for materials furnished to the building on the order of Stanbrough, payment for which Conklin, at its date, was entitled to demand from the contractor, and on failure by the contractor to pay, he (Conklin) was entitled to serve a stop-notice upon the owner. In fact, we may properly infer that he did demand such payment and was met by an offer by the contractor of this order, which was intended to work out, and in fact did work out, precisely the same result as a stop-notice would have done.

I can perceive no difference in equity between the practical effect of an order like this and that of a stop-notice. Each works an assignment by the contractor to the materialman of a portion of the contract price of the building. The order is a voluntary assignment and the stop-notice is an involuntary assignment. That is the only difference between them, and I can see no possible injury to anyone to result from the use of the one rather than the other. It is a mere matter of machinery, and the order is the simpler machine.

*Second.* Its adoption in this case was not contrary to either the letter or the spirit of the fifth section of the act of 1895 (*P. L. of 1895 p. 313; Gen. Stat. p. 2074*), forbidding advance payments, which was construed in *Slingerland* v. *Binns.* That was a case of actual payment made by the owner, in compliance

with the terms of the order, in actual advance of the maturity of the payment on the contract. Here there has been no payment.

It is not contrary to the spirit of the act, because it does not divert any part of the contract price from the reach of the parties who have furnished the labor and materials which created the fund and give it to the general creditors · of the contractor. Such diversion was, and is, the very wrong, and the only wrong, which it seems to me the act was intended to prevent. Here, instead of any such diversion, the result will be to give the money to the very persons whose work and materials created it and for whose protection the act was framed.

*Third.* It is not within either the verbiage or reasoning of the prevailing opinion in *Slingerland* v. *Binns.* That verbiage and reasoning does not include the case of an order given in payment of money due for labor and materials furnished for the building, against the contract price of erecting which the order is drawn and for which the party holding the order was entitled to serve a stop-notice. It did not affirmatively appear in that case that the party in whose favor the obnoxious order was drawn was in a situation which entitled him to give an effective stop-notice, for, as we shall see directly, it is not every person who furnishes materials which go into a building who is entitled to serve a stop-notice. Certainly, the precise question now presented was not put forward or discussed in *Slingerland* v. *Binns,* either in this court or in the court of errors and appeals. The sole question was as to whether or not the contractor could, prior to the maturity of any portion of the contract price, divert it from the laborers and materialmen by giving an order to his general creditors, under the ruling in *Trustees of Public Schools* v. *Heath, 2 McCart. 22.*

And here it is worthy of observation that the prevailing opinion in *Slingerland* v. *Binns* declares that the unpaid laborers and materialmen have an " inchoate " lien for their several claims upon the contract price in the hands of the owner, and makes such " inchoate " lien a reason for holding that the contractor cannot assign by order, in favor of a third person, any part of

the contract price until the labor and materialmen have had an opportunity to enforce their "inchoate" liens by the statutory stop-notice. This declaration of an "inchoate" lien has induced two of the judges of this court—Vice-Chancellor Emery and myself—to do away with some, at least, of the inequities and hardships of the Mechanics' Lien law by holding that all holders of stop-notices shall stand on an equal footing, without regard to the date of service of their several notices; and if the fund here in court shall prove insufficient to pay the holders of the stop-notices and Conklin's order in full, I shall advise that it be divided *pro rata,* so that no advantage can be gained by the holder of an order over the holder of a stop-notice, or of either one over the other.

But the question that arises out of Mr. Conklin's inchoate lien in this case is, how did he lose that lien by accepting an order for the amount of his claim upon the very fund upon which that claim was a lien? I confess I am unable to perceive how he did lose it.

For these reasons, I will advise a decree placing Conklin's first order upon the same basis as the holders of the stop-notices which were served before June 25th, and, after they have been satisfied, Booth & Brother will be entitled to the remainder.

Conklin's second order, of June 24th, stands on a different footing, because it was given for materials furnished by him to Chesterfield, a subcontractor, and used by him in the building, and for such materials he (Conklin) was not entitled to serve a stop-notice under the third section. *Carlisle* v. *Knapp, 22 Vr. 329.*

The result is to pay first all stop-notices served before June 25th, and also Conklin's order of May 1st. If the fund is insufficient for that purpose, the parties just mentioned to be paid *pro rata.* If any of the fund is left after paying them in full, it shall go to Booth & Brother.

The complainant is entitled to its costs and a counsel fee, and each of the prevailing defendants is entitled to costs.