THE BAYONNE BUILDING ASSOCIATION No. 2, complainant,

*v.*

EMILY A. WILLIAMS et al., defendants and respondents.

[Submitted March Term, 1899. Decided June 19th, 1899.
Filed June 19th, 1899.]

1. The inchoate lien given to journeymen, laborers and materialmen by the fifth section of the supplement of March 14th, 1895 (*Gen. Stat. p. 2073*), to the Mechanics' Lien law, can be perfected in no other way than by demand on the contractor, and, on refusal of payment by him, service on the owner, before his liability to the contractor matures, of the notice prescribed by the third section of the original act as revised by the second section of said supplement.

2. Said supplement does not require or authorize payment of such perfected liens *pro rata*. Payment, as before its enactment, must be made in order of priority of service of notice.

---

On appeal of Alfred W. Booth et al. from decree advised by Vice-Chancellor Pitney, whose opinion is reported in *12 Dick. Ch. Rep. 503*.

*Mr. James Benny*, for the appellant.

*Mr. Allan Benny*, for Cooney & Gilbertson.

*Messrs. Robertson & Demarest*, for the other respondents.

The opinion of the court was delivered by

COLLINS, J.

The Mechanics' Lien law, in its third section, as revised by section 2 of the supplement of March 14th, 1895 (*Gen. Stat. p. 2073*), provides as follows:

"Whenever any master workman or contractor shall, upon demand, refuse to pay any person who may have furnished materials used in the erection of any such house or other building, or any journeyman or laborer employed by him in the erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman or laborer or materialman to give notice in writing to the owner or owners of such building of such refusal, and of the amount due to him or them and so demanded, and the owner or owners of such building shall thereupon be authorized to retain the amount so due and claimed by any such journeyman, laborer or materialman out of the amount owing by him or them to such master workman or contractor, or that may thereafter become due from him or them to such master workman or contractor for labor or materials used in the erection of such building, giving him written notice of such notice and demand; and if the same be not paid or settled by said master workman or contractor, such owner or owners on being satisfied of the correctness of said demand shall pay the same, and the receipt of such journeyman, laborer or materialman for the same shall entitle such owner or owners to an allowance therefor in the settlement of accounts between him and such master workman or contractor as so much paid on account."

This section remains substantially unaltered from its original enactment in 1853 as the courts have construed it, the only change in its phraseology being to make specific what was judicially inferred.

In 1862 Chancellor Green was called on by bill of interpleader to consider three classes of claims pressed upon the owner of a building, erected by contract, who owed the contractor a balance insufficient to pay them all. These classes were (1) claims which were for labor or materials furnished for the building and for which the creditors had made demand and given notice under the third section of the Mechanics' Lien law; (2) claims of the same character for which the contractor had given orders upon the owner, and (3) claims for other debts due from the contractor for which he had given like orders.

Bayonne Building Association v. Williams.

It was adjudged that each creditor of these several classes was entitled to be paid in the order in which his notice or order was presented to the owner. *Superintendent, &c.,* v. *Heath, 2 McCart. 22.* This decision has been uniformly followed in the supreme court as well as in chancery, and has been inferentially if not expressly upheld in this court. *Craig* v. *Smith, 8 Vr. 549; Burnett* v. *Jersey City, 4 Stew. Eq. 341; Mayer* v. *Mutchler, 21 Vr. 162; Hall* v. *Baldwin, 18 Stew. Eq. 858.*

In the light of these decisions the legislature, in the same supplement by which it revised and re-enacted the third section of the statute, introduced into it a new feature as follows:

"Sec. 5. That if the owner or owners of any building or other property which, by the act to which this is a supplement or the various supplements and amendments thereto, is made the subject of liens for or toward the construction, altering, repair or improvement of which labor or services have been performed or materials furnished by contract duly filed, shall, for the purpose of avoiding the provisions of the act to which this is a supplement, or the various supplements and amendments thereto, or in advance of the terms of such contract, pay any money or other valuable thing on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of the act to which this is a supplement, or the various supplements or amendments thereto, such owner or owners shall be liable in the same manner as if no such payment had been made."

In *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413,* this court construed the new section to give to workmen and materialmen as against the contractor and his assigns an inchoate lien, *ab initio,* upon the liability of the owner to the contractor of a building for which they furnish labor or material; but distinctly declared that such lien becomes perfect only on service, before that liability matures, of the statutory notice based on demand and refusal of payment, and expires on such maturity if no notice be given. To substitute " simpler machinery " for the perfecting of the inchoate lien would be not to construe, but to legislate. Consequently we cannot approve of the conclusion reached by the learned vice-chancellor in the opinion and decree now before us, that such an inchoate lien may be perfected by an order on the owner. As the respondent Conklin served no notice before

the final payment fell due under the contract, his lien expired, and he must stand simply as the holder of an order and subject to all claims under duly-served notices and under orders presented before his own.

The vice-chancellor's tentative decision that under the supplement of 1895 claimants within its provisions must share *pro rata* a fund insufficient for payment in full, has no operation when the Conklin claim is rejected, but ought not to stand as a precedent. In that respect the law has not been changed. All that the supplement effects is that the contractor shall not by assignment, nor shall the owner by premature payment, defeat a duly-served notice. The express provision is that "such owner or owners shall be liable *in the same manner* as if no such payment had been made." As before the supplement an owner was liable in the order of service of notice, such is still the order of liability. Courts cannot, by construction, "do way with" the "hardships and inequities" of a statute.

We agree with the vice-chancellor in his conclusions of fact, and the result therefore is that, after payment to the complainant of its costs and counsel fee as allowed, the various claimants should be paid in the following order:

1. Cooney & Gilbertson, $306 with interest and costs.
2. Frank Beardsley, $38.82 with interest and costs.
3. William C. Oliver, $360 with interest and costs.
4. Alfred W. Booth & Brother, the residue of the fund, such residue being insufficient to satisfy their claim.

Let the decree be reversed and modified in conformity with this opinion.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—12.

*For affirmance*—None.