RICHARD A. DONNELLY

v.

OTIS F. JOHNES et al.

[Filed August 5th, 1899.]

1. Under the operation of section 5 of the supplement of March 14th, 1895, to the Mechanics' Lien act (*Gen. Stat. p. 2074*), workmen and materialmen who furnish labor and material to the building, acquire an inchoate lien which attaches from the beginning of the owner's liability to the contractor under the contract filed. This inchoate lien becomes perfect, only on service of notice in conformity to the statute before that liability matures, and expires on such maturity as to liens not so noticed. If an installment coming to be due next after the service of such notices, satisfies them and leaves a residue, that residue is at the disposal of the contractor and liable to the attack of his outside creditors. If there be a deficiency, the unsatisfied notices will operate upon the next installment which comes to be due under the contract, in the progress of the work, and so on until the final installment has been disposed of in the same manner.

2. If a workman or materialman give notice for more than is due to him from the contractor, he is not entitled to have the owner retain for him from the contract price. If he give notice for a less sum than is due him, he will be held to have waived his claim for the difference between the sum demanded and the sum actually due, and his notice for the lesser sum, if otherwise in conformity to the statute, will be sustained.

3. Notices to retain operate in succession, in the order of their time of service, to secure payment in full of the amount noticed to be retained.

4. Equitable assignments as between themselves, also operate in the order of their presentation, but their payment is postponed until the notices of the workmen and materialmen have first been satisfied in the manner above stated.

5. In order to secure the special preference of precedent payment given to journeymen and laborers for payment of their wages, &c., by section 43 (7) of the supplement of 1895 (*Gen. Stat. p. 2075*), the claimant must prove that he is a journeyman or laborer, and that his claim is for the payment of wages, &c., and thus show that he is within the class to whom the statute gives this special privilege.

On bill of interpleader. Answers and testimony.

General Donnelly, the complainant, is the owner of a house and lot at Spring Lake, N. J. The house was built by the defendant Johnes, under a contract dated the 1st day of October, 1896, and filed in Monmouth county clerk's office. By the terms of the filed agreement, the contract price was to be paid in six installments at different periods in the progress of the work. The contractor proceeded so far with the performance of the contract that he became entitled to receive the first five installments, all of which were paid to him by General Donnelly, the last one on March 1st, 1897, leaving only the final installment of $2,250 unpaid. The contractor, Johnes, now became financially embarrassed. A judgment was recovered against him by Charles Lewis, and execution and supplementary proceedings were taken thereon, and a restraint from payment was served on General Donnelly on April 17th, 1897, and in the latter part of May, 1897, Johnes abandoned the further prosecution of the work, leaving the house unfinished. Under the terms of the contract, the complainant's architect assumed charge and finished, or nearly finished, the building, as it was stipulated he might, out of the contract price. The last work done on the building was that performed by one Reed, a plumber, employed by the complainant's architect, on August 4th, 1897. On September 30th, 1897, General Donnelly accepted the building as completed, and directed the giving by his architect of a certificate of completion.

Both before and after the failure of Johnes, the various subcontractors, and parties who furnished material or work to him, began to present to the owner, notices to retain their moneys or orders from Johnes to pay them. The sum of all these claims exceeded the moneys due the contractor under the contract, and

Donnelly v. Johnes.

the complainant, having done a considerable amount of work on the building himself, directed his architect to certify the house to be finished, as stated, filed his bill of interpleader and deposited the balance of the contract price in this court.

No dispute is raised touching the expenditures by the complainant out of the contract price in finishing the building, and all the defendants admit that the $2,166.64 brought into court is the true sum remaining payable by the complainant under the contract.

The defendants having filed their answers, none of them disputing the complainant's right, a decree for the complainant was taken that the defendants interplead, &c., and he was dismissed, with his costs of suit. Under the modern practice these answers, which set up the various claims of the parties each against the other, will be taken to be their interpleadings, and the rights of the claimants on the fund will be determined upon the equities thus asserted. *Hall* v. *Baldwin, 18 Stew. Eq. 866.*

At the hearing, all the parties agreed that the copies of notices set forth in the bill of complaint are correct, and that, as to the time of the receipt of notices to and orders on the owner, the statements of the bill are to be taken as true, without further proof. They have been so used.

*Mr. Frank S. Katzenbach, Jr.*, for the complainant.

*Mr. David Harvey, Jr.*, for William B. Crowther and others, defendants.

*Messrs. Hawkins & Durand*, for Benjamin B. Pearce, receiver, &c., and others, defendants.

*Mr. Samuel A. Patterson*, for Charles P. Pridham and others, defendants.

*Messrs. Howell Brothers*, for Doyle & White, defendants.

*Mr. Claude V. Guerin*, for Richard E. K. Rothfritz, defendant.

*Mr. Joseph McDermott*, for Charles McDermott, defendant.

*Mr. Stephen C. Cook*, for Edward Kleinkauf and others, defendants.

*Mr. Samuel G. Naar*, for Richard Smith, defendant.

*Mr. Carroll Robbins*, for A. K. Leuckel & Co. and others, defendants.

GREY, V. C.

The claims against the fund in court consist of four classes— *first*, stop-notices, served under the third section (now thirty-eighth) of the Mechanics' Lien act; *second*, orders for payment given by Johnes, the contractor, upon Donnelly, the owner; *third*, a judgment entered April 12th, 1897, and supplementary proceedings and a receivership thereunder in the suit of *Charles Lewis* v. *Otis F. Johnes*, the contractor, in the Monmouth circuit court, and *fourth*, an attachment issued out of the supreme court in the case of *Harry A. Ashmore* v. *Otis F. Johnes*, on October 2d, 1897.

The *status* of claims under orders (operating as equitable assignments) given by a contractor upon the contract moneys in the hands of the owner, in cases of building contracts which have been filed, &c., has been materially changed by the supplement to the Mechanics' Lien act, passed March 14th, 1895, and to be found in *Gen. Stat. p. 2074 ¶ 41 (5)*. This statute prescribes that where the contract is filed, if the owner shall

"for the purpose of avoiding the provisions of the act which this is a supplement, or in advance of the terms of the contract, pay any money * * * on such contract, and the amount still due to the contractor after such payment h s been made shall be insufficient to satisfy the notices served in conformity with the provisions of the act of which this is a supplement, such owner * * * shall be liable in the same manner as if no such payment had been made."

, The court of appeals interpreting this act has, in the case of *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413*, declared that this supplement changes the situation, and forbids the owner to pay

any money in advance of the terms of the contract if the effect be that the amount unpaid will prove insufficient to satisfy ·notices served in conformity to the statute. The essential principle of this decision is its declaration that the effect of the supplement is to secure

" to persons entitled to serve the statutory notice, an inchoate lien upon the liability of the owner under the contract, such lien to become perfect on service of the notice before the liability matures, but to expire on such maturity if no notice has been given, for a notice served after maturity derives no aid from this provision. Of course this inchoate lien does not impair the owner's right to protect himself against the consequences of any default upon the part of the contractor."

In *Leary* v. *Lamont, 42 Atl. Rep. 97,* it was held in this court that the supplement of 1895, as expounded by the judgment of the court of appeals in the case of *Slingerland* v. *Binns,* has altered the previous operation of notices served under the old third section so that they no longer gave priority according to date of service, but becoming inchoate liens as fast as the work was done or material furnished, they were perfected by service of notice and chargeable on the fund *pro rata,* regardless of the order of priority of service of notice.

In *Bayonne Building and Loan Association* v. *Williams, 42 Atl. Rep. 172,* the supplement of 1895 and the judgment in *Slingerland* v. *Binns* were again discussed in this court. The construction declared in *Leary* v. *Lamont* that noticing materialmen and laborers took *pro rata,* and not in succession according to date of service of notice, was approved. It was also held that there was no difference in equity between an order given by the contractor upon the owner for the price of material used in the building, and a stop-notice served by one who furnished material used in the building in conformity with the requirements of the third section of the original Mechanics' Lien act.

On appeal, *Bayonne Building and Loan Association* v. *Williams* was reversed, and the declaration in that case and in *Leary* v. *Lamont* that the stop-notices should be paid *pro rata* and not in full according to order of service, was overruled. *43 Atl. Rep. 669.*

The court of appeals declared that, under the supplement of 1895, statutory stop-notices still entitled the noticing party to be paid in full in the order in which the notices were presented to the owner as theretofore they had, and that the inchoate lien created by the operation of that supplement could be perfected only by serving the notice required by the provisions of the Mechanics' Lien act, and not by an order given on the owner by the contractor; that the inchoate lien attaches *ab initio* upon the liability of the owner to the contractor of a·building for which workmen and materialmen furnish labor and material; that the lien becomes perfect only on service of the statutory notice before that liability matures, and expires on such maturity if no notice be given.

The effect of this construction of the supplement of 1895, in cases where the contract price is payable by installments, is to require an ascertainment of the time when under the terms of the contract each payment comes to be due. Each person entitled under the lien act to serve a stop-notice has an inchoate lien charged upon the contract price, which lien becomes complete on service of the stop-notice before the liability on any installment matures, but expires on such maturity as to any claims on which no notice has been given. An owner, in order to protect himself, must, therefore, as each installment comes to be due (if it is not needed to protect him from the contractor's default), apply it first to the payment of the moneys theretofore demanded by the stop-notices served in conformity to the lien act, and if any portion remains thereafter, he must apply that residue to the satisfaction of any equitable assignment which has been presented, or other lawful charge upon the funds in his hands, or pay it to the contractor.

Under the declaration of the law above recited, the workmen and materialmen obtained "an inchoate lien *ab initio* upon the liability of the owner to the contractor of the building." The liability of the owner to the contractor (subject to the performance of the agreement) begins with the delivery and filing of the contract, and therefore each installment of the agreed price must be held to stand from the time of filing the contract (as

Donnelly *v.* Johnes.

to the workmen and materialmen who may furnish labor or material) as a fund charged to pay them for work or material supplied to the building in case they serve on the owner the statutory notice before the installment matures, and discharged as to each installment that comes to maturity without such service of notice.

If it were held that the lien of the workmen and materialmen arises only as each may furnish work or material to the building, then an order given by the contractor on the owner after the filing of the contract, but presented before the work was done, under which stop-notices were subsequently served, would precede the inchoate lien of the workmen and materialmen, contrary to the purpose of the supplement of 1895, which is expounded by the court of appeals to intend that the contract price, until the time arrives when by the terms of the contract it becomes payable to the contractor, shall stand to respond, first, to complete the contract, and next, for the workmen and materialmen who serve the statutory notices. Almost all building contracts provide for payment in installments, which come to be payable not 'at named calendar periods but upon the completion of specified successive stages of the work. If the installment thus coming due next after the notices served, satisfies them and leaves a residue, that residue is at the disposal of the contractor; if there be a deficiency, the unsatisfied notices will operate (with any others that may meanwhile be served) upon the next installment which comes to be due under the contract by the progress of the work, and so on until the final payment has been disposed of in the same manner.

Applying this interpretation of the supplement of 1895 to the case under consideration, it must be noted that the only installment affected is the last payment of $2,250; that the first charge against this is such sum as was necessary to secure the owner in completing the building under the terms of the contract. This sum has been expended, leaving a balance of $2,166.64, which has been paid into court in this cause. It is a matter of vital importance to ascertain the time when the liability of the owner in any installment sought to be applied

by a notice matures, because it is only those notices which are served before that time that are effective.  After maturity of the owner's liability, without notice served, the statutory inchoate lien expires as above stated.

In the case under consideration the terms of the contract prescribed that the final payment should be due (and thus matured the liability of the owner) "thirty days after completion and acceptance" of the building.  It is shown without dispute, by the testimony of General Donnelly, that the building was accepted as complete by a certificate of the architect to that effect, issued on September 30th, 1897.  Thirty days after this period was October 30th, 1897.  The liability of the owner for the final payment matured on that day.  All notices which perfected inchoate liens of workmen and materialmen must, therefore, have been served on or before October 30th, 1897.  Any residue remaining after satisfying these perfected liens became, on and after October 30th, 1897, free from the operation of all liens under the statute, and applicable to the general use and direction of the contractor, by payment to him or to his order, or liable to charge as his property.

A necessary consequence of this construction is that liens on the fund in favor of equitable assignees of the contractor, and of his attaching creditors, all fasten upon it as of the date on which they may respectively be lawfully charged, but subject to the superior rights of workmen and materialmen whose inchoate liens relate back to the beginning of the liability of the owner. These latter liens may be discharged (if perfected by proper notice) by payment out of the fund or (if not so perfected) by the maturing of the liability of the owner.  In either event, the residue of any matured portion of the fund becomes applicable to the payment of the charges upon it arising outside of the Mechanics' Lien act in the order of their priority of service.

The claims by statutory notices under the lien act are quite numerous, and some of them are sharply disputed.  As they are payable in the order of their service, they will be considered in that order.  Those of them which have been efficiently served and sustained by proof, will be directed to be paid in full from

29

the fund in their order of priority, treating them as superior liens which were a charge upon the fund. · The residue of the fund (these superior liens being thus satisfied) will be applied to pay such other claims as may have been charged upon it.

A notice to retain, to be in conformity with the provisions of the lien act, must be preceded by a demand upon and a refusal of pay by the contractor; it must be in writing and must notify the owner of such demand and refusal, and of the amount due the noticing claimant, and the owner must be satisfied of the correctness of the demand. See *Gen. Stat. p. 2073 ¶ 38; Reeves* v. *Elmendorf, 9 Vr. 125.* The privilege of preferential payment out of the contract price fund is purely statutory; it becomes complete only when the statutory conditions are fulfilled. If these are not complied with, the owner has no right to pay and the claimant no right to receive payment from him.

The first notice claimed to have been served on the owner, General Donnelly, is that of Warren, Balderston & Company, on December 29th, 1896, by a notice in the form of a letter of that date, signed and sent by the claimant to him. The claim is so lacking in the requisites prescribed by the third section of the Mechanics' Lien act (now *Gen. Stat. p. 2073 ¶ 38*) that it cannot operate to retain any of the fund. The statute requires that the claimant shall make demand upon the contractor for payment of the money due him, and whenever he is refused he shall give notice in writing to the owner of such refusal and of the amount due him and so demanded. This letter of Warren, Balderston & Company neither states a refusal of payment by the contractor nor the amount demanded to be retained, nor is any proof made to support the claim. It must therefore be rejected.

The second notice claimed to have been served was that of Pullen & Wright, trading as Trenton Stair Building Company. This notice fails because of the same defects noted in the claim of Warren, Balderston & Company, and also because the notice is that payment for future work then yet to be done would be demanded from General Donnelly when it was finished. The statute contemplates a notice given after the work has been

done, so that payment therefor might rightfully have been demanded.   This claim is subsequently dealt with under another notice.

The third notice is claimed to have been served by William B. Crowther, Jr., on April 4th, 1897, by a letter sent by mail to General Donnelly.   The nearest Mr. Crowther came to notifying General Donnelly of the refusal required by the act is the statement in his note to him, in these words: "I can't seem to get a settlement from Mr. Johnes, the builder."   This phrase does not show any reason why he could not get a settlement. There may have been other reasons than a refusal of payment. Crowther may never have asked for payment.   This letter certainly does not give any notice to General Donnelly that Crowther had made a demand for payment upon Johnes and received a refusal from him, and must be rejected as insufficient.

The next notice is claimed to have been served by Paul C. Taylor, by two letters sent by mail—one dated April 20th, 1897; the other, of a somewhat later date, has been lost by the owner, General Donnelly.   The first letter on the subject is set forth in the bill, and is dated April 20th, 1897, written by Taylor to General Donnelly, who states in his bill that he received it about April 21st, 1897.   The letter is defective as a notice, because it gives no warning of any refusal of the contractor to pay upon demand made.   The nearest phrase in this note to the statutory requirement is in these words : " Not having been paid in full as yet, thought I would drop you a line or so to inform you of the same."   In the second letter Mr. Taylor enclosed his itemized bill, stating the amount due to be $34.95. When asked whether the letter containing that itemized bill communicated any statement to General Donnelly, he said he was not sure whether there was anything said.   Then he stated that he thought he had told General Donnelly in his second letter that he had demanded payment of Johnes, and had by him been referred to General Donnelly.   He declared he knew that he told Donnelly that Johnes had referred him (Taylor) to Donnelly for payment, and that he looked to the latter.   These varying statements are the testimony of a witness

in his own behalf, seeking to prove the contents of a lost letter, which he claims operated as a notice that he had been refused payment on demand. I am unable to give them much weight, in view of their uncertainty and the interest of the witness. The second letter to General Donnelly in all probability simply enclosed the itemized bill, as that was the only occasion for writing it. The varying statements of the witness are quite too uncertain to support a finding that the lost letter contained a notice to Donnelly of a refusal by Johnes to pay on demand.

The next notice was served by Doyle & White, on April 26th, 1897, by a letter by mail, and notifies General Donnelly that Johnes had given them an order on him for $450 for lumber furnished at his house, asking him to retain that amount from money due, or to become due, to Johnes and to pay it to them, Doyle & White. No reference whatever is made to any demand or refusal by Johnes to pay. The letter amounts to no more than a notice that Johnes had given an order on Donnelly in favor of Doyle & White. This is in no sense such a notice as the statute requires, and this claim as such must be rejected. It is hereinafter considered as an equitable assignment.

The next notice was served on April 30th, 1897, by Jacob Haberstick, by a letter by mail, to General Donnelly, dated April 28th, 1897. This letter, like the last, gives no notice of any refusal by Johnes to pay on demand made. It simply states "the amount due me on your cottage at Spring Lake, N. J., is $320. Please hold the amount for me," with a postscript as follows: "Mr. Johnes requested me to protect my claim." This letter is wholly insufficient to satisfy the requirement of the statute. Like the others, it gives no notice of any refusal or demand made upon the contractor for payment.

All of the above so-called notices were, in fact, letters sent by mail in ordinary correspondence for the collection of money due, and in none of them is there any attempt to give notice of any refusal of Johnes to pay on demand made. At the time these letters were written there was no purpose that they should be statutory notices. Although they were in the style of business

Donnelly *v.* Johnes.

letters, yet if the essential requirements of the statute did, in fact, appear in such correspondence received by General Donnelly, the mere form of their expression would not have prevented the letters from operating as statutory notices. · But they all lack these requirements, not only in form but in substance. · The claimants are now seeking to give to the correspondence an effect not contemplated by them when the letters were sent.

The next notice was served on General Donnelly, on the 30th day of April, 1897, by A. K. Leuckel & Company, for $760.23. This gives efficient notice to the owner of the amount of the debt due from Johnes for work and material done on the building in question, of demand made upon him for payment, and of his refusal, and the proofs made in behalf of these claimants show that the above amount of $760.23 is due to them under the provisions of the statute.     This claim of A. K. Leuckel & Company, being the first efficient notice, is the first to be paid in full out of the fund in court.

The next notice is that of Charles Pridham, received by General Donnelly by mail, on May 13th, 1897, demanding that he retain $232 for work done and materials furnished.     The notice served complies with all the requirements of the statute.     The claimant, when testifying in proof of his claim, stated that his contract was by parol ; that he had served his notice on May 13th, 1897, and in one part of his testimony he said that at that time he had not entirely completed the work.     The claimant appears to be a truthful man, but is evidently unfamiliar with the giving of testimony, and his statements are somewhat confused.     He afterwards explained that there was some extra work engaged, which he did, but that he had, in fact, completed his contract work before his notice was served ; that the contractor acknowledged that he had more than finished it when he demanded his pay, and that the work which he did on the house after the original completion of his contract, was some finishing and retouching of the floor, done " gratis " to please Mrs. Donnelly.     I think the proofs offered fairly sustain the notice, and that Mr. Pridham is entitled to the $232 demanded by his notice.

This is the second efficient notice and proof, and is to be secondly paid from the fund.

The next notice claims to have been served by Paul C. Taylor, on June 12th, 1897, for $34.95 for hardware. This is the same claim heretofore referred to as a letter received by General Donnelly, about April 21st, 1897. When that letter was received, General Donnelly requested Taylor to send him an itemized bill, which he did about June 12th, 1897. This letter containing the itemized bill is not shown to have been any nearer to being a notification to the owner of a demand for payment from the contractor and his refusal to pay than was the first letter of April 20th, 1897. Mr. Taylor testifies that he is not able to state clearly just what further he wrote, except that he told General Donnelly that he was by Johnes referred to him, and that he should look to him for payment of the bill. As stated above, such correspondence stating merely that the claimant was referred to an owner for payment, is not a notification of a demand and refusal.

The next claim is a notice served September 21st, 1897, by Pullen & Wright, trading as Trenton Stair Building Company, for $195 for work and materials, &c. The notice served sufficiently complies with the statutory requirements, and the proofs support it. This claim is entitled to be thirdly paid in full from the fund in court.

The next is the claim of Jonathan G. Ely, under a notice served October 4th, 1897, for $186.31, stated to be for wages. The notice conforms to the statutes. This claimant is a carpenter whose book was found not to be admissible because lacking in essential incidents necessary to make it evidence. The claimant appears, by the typewritten copy of his testimony, to have varied in his statements of the total amount of the partial payments made to him. When stating his items of work, price and payments from his book, using it as a memorandum to refresh his memory, he is probably more accurate than when attempting to recall the matter by his unaided memory. Taking this part of his testimony as a guide, it shows that his account should be stated as follows:

Donnelly v. Johnes.

One hundred and fourteen and one-quarter days' work,
  at $2.75 per day............................................... $314 18
Deduct payment by Johnes on account...................... 124 97
                                                         ─────────
  Actual balance due Jonathan G. Ely.................. $189 21

This sum, $189.21, was $2.90 more than he demanded. Though a demand for more than is due has been held to be fatal (*Reeves* v. *Elmendorf, 9 Vr. 133*), a demand for less would seem to work no injury to anyone but the claimant, who may be held to have waived the remainder due him. Mr. Ely is an illiterate man, and evidently made an error in his calculation in presenting his claim for a less sum than was due him. As this mistake led only to his own loss, his claim as made for the lesser sum, $186.31, should be admitted to payment. It is contended against its allowance, that Ely had a private sub-agreement with Johnes, the contractor, whereby he (Ely) became a partner in Johnes' contract for building General Donnelly's house. There appears to have been some talk of an agreement by which Ely should have part of Johnes' profits in the building contract, if there were any.

The evidence is quite insufficient to show that there was any partnership and too uncertain to sustain any contract even for profit-sharing, as it appears there was neither perfected agreement between the parties nor arrangement as to how profits were to have been ascertained, nor what share either was to have received, nor any consideration for such an agreement. The profit-sharing seems to have been a discussed proposition rather than a contract. Moreover, it is expressly shown that there was a distinct agreement between Johnes and Ely that the latter should receive $2.75 per day for his services. This claim of Jonathan G. Ely is entitled to be fourthly paid from the fund in court.

The next is the notice of Edward Ely, served October 4th, 1897, for $50, stated to be for wages due him for carpenter work. The notice is in conformity to the requirements of the statute, and the proof shows demand made and that there was a refusal to pay. This claimant also had an order given him by Johnes for the payment of this $50, which he presented to General Don-

Donnelly v. Johnes.

nelly on May 1st, 1897.   Under the supplement of 1895, above quoted, this order could only operate subject to such statutory notices as should be served.   On October 4th, 1897, Edward Ely served the notice above referred to, which is effective.   This claim is entitled to be fifthly paid from the fund.

The notices of these two claims of Jonathan G. Ely and Edward Ely, served upon the owner and set forth in the bill, allege that the amounts respectively demanded were due for wages earned as journeymen carpenters.   The supplement of 1895 (*Gen. Stat. p. 2075* ¶ *43* (7) provides that the claim of journeymen or laborers shall have priority and preference over employers of labor, contractors or materialmen for the payment of wages without reference to the date of the service of notices. To secure this special statutory preference the claimant must not only give the notice required by the act, but when his claim is litigated, must prove by evidence that he is within the class of journeymen or laborers working for wages, to which the statute gives this preference.   The notices served to retain, &c., for these two claims, sufficiently notify the owner that they are within this specially preferred class.   But the proof offered to support the claims does not sufficiently show the claimants to have been as alleged in the notices, journeymen claiming payment of wages. The result is that while shown to be entitled to the position of workmen who have noticed in conformity to the act, these two parties have not proven themselves entitled to the special preference over employes, &c., given to those who are journeymen or laborers working for wages, &c., by the forty-third section of the act.   *Gen. Stat. p. 2075.*   In this case this omission of proof happens to make no difference, as the fund is sufficiently large to pay in full all the workmen and materialmen who have served notices in conformity to the act.

The distribution of the fund in court as above directed stands at this stage as follows:

Fund in court.......................................................... $2,166  64
Deduct costs of this suit.........................................   ......  ....
                                                               $......  ....

Donnelly v. Johnes.

Claims above allowed as noticed in conformity to the statute :

A. K. Leuckel & Co .................................................. $760 23
Charles Pridham...................................................... 232 00
Pullen & Wright...................................................... 195 00
Jonathan G. Ely......    ....................        .........   186 31
Edward Ely.........................................    ...............   50 00

The foregoing are the only notices which appear to have con-
formed to the requirements of the statute and to have become
complete liens on the fund by service before the maturity on
October 30th, 1897, of the liability of the owner under the
contract, according to the construction of the supplement of
1895, as expounded by the court of appeals in *Bayonne Build-
ing and Loan Association* v. *Williams, 43 Atl. Rep. 669.*

The residue of the fund not necessary to pay these perfected
liens became, on October 30th, 1897, free from all the inchoate
liens under the Mechanics' Lien act, and was thereafter subject
to such disposal as the contractor might make of it, and to the
enforcement of such other liens or charges as his creditors might
have established upon it. These other charges, thus relieved of
the superior statutory liens, are, as against this residue of the
fund, enforceable in the order of their priority, which I find to
be as follows :

The first is the claim of Edward Kleinkauf, under an order
for $60 given by Johnes, the contractor, upon General Don-
nelly, owner, and served upon him on April 1st, 1897. This
order operated by way of equitable assignment, subject to the
statutory, inchoate and subsequently-perfected liens, which
having been satisfied, this should be first paid out of the resi-
due of the fund.

The next in point of date is the claim of Benjamin A. Pearce,
receiver, under the supplementary proceedings on the judgment
of Charles Lewis against Otis F. Johnes, the contractor, and
execution thereunder issued April 12th, 1897. This claim does
not appear to be valid under the construction given to the stat-
ute authorizing such proceedings. In *Willison* v. *Salmon, 18
Stew. Eq. 257,* the court of appeals held that while the right of

a judgment creditor to this relief against his debtor authorized
the seizure of actually-existing debts, money to become due by
the future performance of a building contract is not such an
existing debt.  It is a mere inchoate right, upon which the
statute does not operate.  In that case, as in this, the supple-
mentary proceedings were taken by a receiver to secure the final
installment of a building contract before the contract had been
performed.  The court also held that if a different conclusion
had been reached the receiver's claim could not have been supe-
rior to the noticing claimants under the lien law, because all the
receiver could acquire was the right of the contractor, who was
the debtor, in the judgment, and his right was subject to the
superior charge of the noticing lien claimants.  Under the first
ground stated in the case of *Willison* v. *Salmon*, the receiver
had no authority to attach the moneys not yet earned, and his
claim must be rejected.

Then follow a number of orders drawn by Johnes, the con-
tractor, and served upon General Donnelly, the owner, each
operating by way of equitable assignment and payable out of
the residue of the fund, in the order of their priority, as
follows :

O. E. Askew, for $65.80, served on April 17th, 1897.  This
should be secondly paid.

Addison B. Johnes, for $45, served on April 20th, 1897.  This
should be thirdly paid.

Richard H. Smith, for $60, served on April 23d, 1897.  This
should be fourthly paid.

Charles McDermott, for $200, served on April 25th, 1897.
This should be fifthly paid.

Doyle & White, for $450, served on April 26th, 1897.  This
should be sixthly paid.

The liens of the above notices, served in conformity to the
requirements of the Mechanics' Lien acts and the other equi-
table charges upon the residue above ascertained and estab-
lished, are more than sufficient (with the costs of suit) to absorb
the whole of the moneys paid into the court in the cause.

There are several claims which are excluded from sharing in the fund because the fund is insufficient to pay them.    I do not deem it necessary to discuss these in detail.

A decree will be advised in accordance with the views above expressed.