SARAH C. SMITH et al., complainants and respondents,

*v.*

DODGE & BLISS COMPANY et al., defendants and appellants.

[Filed November 21st, 1899.]

1. The inchoate lien acquired by materialmen and workmen under the third section of the Mechanics' Lien law, as amended by the second section of the act of March 14th, 1895 (*Gen. Stat. p. 2073*), cannot, by force of the fifth section of the latter act, be impaired or defeated by an advance payment on the contract price or by a secret arrangement between the contractor and owner, unless such arrangement is authorized and provided for in the contract as filed.

2. Those who serve stop orders, under the statute, are entitled to be paid in the order of priority in which notices are served and not *pro rata*.

On appeal from a decree advised by Vice-Chancellor Pitney.

*Mr. Joseph Anderson* and *Mr. Henry J. Melosh*, for the respondents.

*Mr. James F. Fielder*, for the appellants.

The opinion of the court was delivered by

VAN SYCKEL, J.

The controversy in this case arises under the Mechanics' Lien law, in regard to materials furnished to one Anderson, a contractor, and used by him in the erection of a building for Sarah C. Smith, the complainant, under a contract duly filed.

The Dodge & Bliss Company claim the money payable under the contract to the contractor, Anderson, by virtue of notice served, under the third section of the Mechanics' Lien law. *Gen. Stat. p. 2073 pl. 38.*

The Barnes Manufacturing Company claims the money under an order of which the following is a copy:

Smith *v.* Dodge & Bliss Co.

"Jersey City, Nov. 19th, '97.

*"The Barnes Manufacturing Co., West End, Jersey City, N. J.:*

"Gentlemen—Please deliver. to A. A. Anderson, at my frame building, brick cellar, corner Boulevard and Mandeville avenue, Jersey City, N. J., now being erected by him for me, the frames, sash, blinds and doors, as ordered by him at the price agreed, namely, seven hundred and ninety-seven dollars ($797.00), which sum I agree to pay to you out of moneys due or to grow due to me from him on said building and under his contract, and payments to be made as goods are delivered.

"Yours truly,

"Sarah C. Smith."

In *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413,* in construing the effect of section 5 of the supplement to the Mechanics' Lien law, approved March 14th, 1895, this court said : "Prior to the supplement this court had held that the contractor in a building contract was free to deal with his inchoate rights under the contract as he pleased, up to the moment when they were impounded by a notice given to the owner pursuant to the statute, and if, before the notice reached the owner, the contractor had assigned his rights, the notice was ineffectual. The basis of these decisions was that the statute gave the workmen and materialmen no claim whatever upon the moneys payable under the contract or upon the owner until the statutory notice was served. But plainly.this section of the law changes the situation. It expressly forbids the owner to pay any money in advance of the terms of the contract, if the effect may be that the amount unpaid will prove insufficient to satisfy notices served in conformity with the statute. In substance it directs that the owner shall not in any way discharge his liability to pay under the contract until, according to the terms of the contract, the time to do so has arrived, in order that until that time such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notice. This enactment, we think, affords a reasonably clear indication of a legislative purpose to give to persons entitled to serve the statutory notice an inchoate lien upon the liability of the owner under the contract until that liability matures, according to the terms of the contract, such lien to become perfect on service of the notice

before the liability matures, but to expire on such maturity if no notice has been given; for a notice served after maturity derives no aid from this provision."

This interpretation of the statute was re-affirmed in *Bayonne Building Association* v. *Williams, 43 Atl. Rep. 669.*

It firmly establishes the doctrine that an inchoate lien under a filed contract attaches in favor of workmen and materialmen, which can be perfected and the lien firmly established in the order of priority in which stop notices are served, and that such inchoate right of materialmen and workmen cannot be impaired or defeated by the owner by making payment in advance of the terms of such contract.

It is a vested right under the statute, and as such is secure as against the act of the owner. The statute is an assurance to materialmen and workmen that they may rely upon the terms of the contract as filed, and that there shall be no advance payment, and no secret arrangement between the contractor and owner not authorized by the terms of the contract, by which any payment of money required thereby shall be withdrawn from the operation of a stop order before such payment matures.

It is obvious, therefore, that the order given by Sarah C. Smith, the owner, to the Barnes company, cannot operate to diminish the sum in the hands of the owner under the terms of the contract, and thereby to defeat the inchoate lien of the materialman unless the contract itself reserves the right to the parties to it to change it at their option. In that event the materialman and workman must give credit to the contractor at their peril, and are without this inchoate right of lien, or more strictly speaking, are subject to have that right taken away by a change of the contract without their consent.

Does this contract reserve the right to the contractor and owner, or either of them, to modify or change it, so far as to defeat the lien in this case?

The only provisions of the filed contract bearing upon the question of the reserved right to change it, are the following:

"Article 3. Should the owner, at any time during the progress of the said building, request any alterations, deviations, additions or omissions from the said contract, she shall be at liberty to do so, and the same shall in no way

Smith *v.* Dodge & Bliss Co.

affect or make void the contract, but will be added or deducted from the amount of the contract, as the case may be, by a fair and reasonable valuation.

"Article 4. Should the contractor, at any time during the progress of said works, refuse or neglect to supply a sufficiency of material or workmen, the owner shall have power to provide *materials and workmen,* after three days' notice *in writing being given,* to finish the work, and *the expense* shall be deducted from the amount of said contract."

Article 3 manifestly does not authorize the advance payment. It provides that the owner at any time during the progress of the building may request any alterations, deviations, additions or omissions from the contract.

According to Mrs. Smith's own evidence she made no request for any change in the contract as filed, and the rights of the parties cannot be affected by this stipulation.

Article 4 is equally inoperative. It does not appear that the contractor at any time refused or neglected to supply material or workmen, or that the owner provided materials or workmen to finish the work.

The contractor had not abandoned the work at the time this order was given, and Mrs. Smith never took upon herself the burden of completing it. The case shows conclusively that there was no such understanding between the parties to the contract. The order was given by Mrs. Smith to the Barnes company long before the contractor became disabled to complete the undertaking by reason of his financial difficulties. There is no evidence to justify a claim that he had refused or neglected to supply material or labor or that Mrs. Smith gave this order in the exercise of any right she had reserved under the fourth clause of the agreement filed. On the contrary, she says in her bill that she signed the order at the instance and request of the Barnes company. It must be regarded as an effort on the part of the Barnes company to gain an advantage over other creditors of the contractor, in contravention of the statute. If by such an arrangement as the order to the Barnes company the stop notices can be superseded and postponed in order of priority, the statute became virtually inoperative, and the inchoate lien, recognized and hitherto enforced, becomes a lien in name and not in substance. Such an interpretation of the statute would be in utter disregard of both its letter and its spirit.

Smith *v.* Dodge & Bliss Co.

It is suggested that the stop orders lose nothing by reason of the fact that the fund to be distributed is not decreased because materials were furnished by the Barnes company which could not otherwise have been secured, ana the contract payment was thereby earned. There is no authority for such an assumption, and if justified it cannot affect the legal rights of the parties. The inchoate lien is not a lien on the building, but on the contract price remaining in the hands of the owner, and which the law holds there according to the terms of the contract. If by this secret arrangement one payment on the contract may be excluded from the operation and effect of the statute, every payment provided for in the contract might, at the very inception of the work, have been anticipated and diverted in the same way for the benefit of favored creditors, and the statute thus rendered entirely nugatory. Thereby the creditors who, as in this case, continued their credits to the contractor upon the belief that he would be entitled to the payments provided for in his contract, would be left without any fund upon which to impress their statutory lien.

The rights of those who served stop orders are superior to the claims of the Barnes company, and they must be paid in the order of priority in which they were served and not *pro rata.*

The decree below should be reversed and the case remitted to the court of chancery, that a distribution may there be made, in accordance with this opinion, of the $791.77 found by the court below to be the proper sum to be distributed out of the last payment under the contract.

*For modification* — THE CHIEF-JUSTICE, VAN SYCKEL, GUMMERE, LIPPINCOTT, BOGERT, ADAMS, NIXON, VREDENBURGH—8.

*For affirmance* — DIXON, GARRISON, LUDLOW, COLLINS, HENDRICKSON—5.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, LIPPINCOTT, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—13.