The defendant New York Sash and Door Co., Inc., moves to strike the bill of interpleader filed herein. It urges as a reason therefor that the complaint does not contain the elements necessary to sustain it. On October 6th, 1939, the complainant entered into a written agreement with Michael Gernat to erect a dwelling for her on the land described in the bill to cost the sum of $5,600. On October 21st, 1939, before any work was performed, the agreement and the specifications for the building were filed with the clerk of Bergen county. Construction started and it proceeded to a certain point when Gernat, on or about May 7th, 1940, abandoned the contract, *Page 433 
and left the building unfinished. Payments were made to him from time to time in conformity with the terms of the building agreement; all but the sum of $1,395 of the total amount of the contract price had been paid to him.
When Gernat failed to continue with the construction, "stop-notices" for work done and material supplied were filed in the office of the clerk of Bergen county by the following:
On May 31st, 1940, by Vito Mazzarisi for $109; copy served on complainant on June 7th, 1940.
On June 5th, 1940, by New York Sash and Door Co., Inc., for $995.18; copy served on complainant on June 7th, 1940.
On June 11th, 1940, by Harris Jaffe Co. for $523.08; copy served on complainant on June 12th, 1940.
On June 15th, 1940, by Albanese Plumbing Heating Co., Inc., for $720; copy served on complainant on June 15th, 1940.
On September 30th, 1940, Joseph Sidor submitted bill to complainant in the sum of $80 for services rendered to Michael Gernat on said building.
The above claimants receiving no satisfaction from Gernat, then made demands for payment upon the complainant. In turn, she, on June 7th, 12th and 19th, 1940, pursuant to the statute, in writing, notified Gernat of the notices and demands given to her by the claimants. She alleges that "Gernat has never notified" her that "he has given Vito Mazzarisi, New York Sash and Door Co., Inc., and Albanese Plumbing Heating Co., Inc., or either of them, a notice in that he disputes their claims, or requesting any of them to establish the same by judgment, pursuant to the statute."
The New York Sash and Door Co., Inc., and Albanese Plumbing 
Heating Co., Inc., have instituted actions at law against the complainant to recover the amounts claimed to be due them.
In order to complete the building, complainant says she will be obliged to expend the sum of $398.75. She asserts that she stands ready to pay the unpaid balance of $1,395 due under the contract, less the $398.75, which she says it will be necessary for her to pay in order to complete the building, to "such persons as are rightfully entitled to the same." *Page 434 
The defendant New York Sash and Door Co., Inc., urges that the complainant has an adequate remedy at law. I, also, am of that opinion. The Mechanic's Lien law, R.S. title 2, subdivision 60,paragraph 116, provides:
"When any master workman or contractor or any contractor under any master workman or contractor refuses, upon demand, to pay any person who has furnished him materials for use in or about the erection, construction, completion, alteration or repair of any such house or other building mentioned in section 2:60-115 of this title, or any addition thereto, or to pay any subcontractor, journeyman or laborer employed by him in erecting, constructing, completing, altering or repairing any building or any addition thereto the money or wages due him, the materialman, journeyman, laborer or subcontractor shall file with the proper county clerk, a written notice of the refusal and the amount due and demanded, specifying the amount as nearly as possible."
Also pertinent is —
2:60-117. "After such notice is filed pursuant to section 2:60-116 of this title, the owner of such building shall thereupon be authorized to retain the amount so due and claimed by such materialman, journeyman, laborer or sub-contractor out of the amount owing by him on the contract or that may thereafter become due from him on such contract for labor performed or materials furnished in the erection of such building, giving the master workman or contractor and any contractor under any master workman or contractor written notice of such notice and demand."
And applying also, is —
2:60-119. "The owner, if such claim or demand of the materialman, journeyman, laborer or subcontractor is not paid or settled by said master workman or contractor or such contractor under any master workman or contractor, shall, on being satisfied of its correctness, subject to the provisions of section 2:60-122 of this title, pay the same in the order in which notices have been filed as provided by section 2:60-116 of this title."
The complainant received the notices of the claimants' demands and, in writing, notified Gernat of her receipt of them. R.S.2:60-117. Up to that point, she followed the provisions of the Mechanic's Lien law and then departed from its course. She should have continued with her activities *Page 435 
under it and have followed its directions as outlined in R.S.2:60-119 and 2:60-122, which provide for the disposition of the claims. Her failure to heed the mandate of the statute gave rise to her faulty procedure.
It may be stated that, in the instant case, it does not appear that there are any conflicting claims to the fund made by two or more claimants. The amounts are not disputed. There is no confusion as to the priority of position of the "stop-notice" claimants, nor as to the order in which payment should be made. In Equitable Life Assurance Society v. Kelsey, 124 N.J. Eq. 38; 199 Atl. Rep. 590, the court, among other things, said:
"That which is requisite to establish the right to decree of interpleader is that complainant has some certain thing or fund in its possession, or control, or owes a certain debt; that conflicting claims for that same thing, fund or debt are made by two or more claimants; that complainant does not itself make any claim of right to the thing, fund or debt, but desires to pay or turn it over to whatever person is rightfully entitled thereto, and be thereupon discharged of all further liability; that complainant has a right to be free from any and all liability to more than one of the claimants; that no defendant will be injured or prejudiced by a decree of interpleader discharging complainant from all liability other than that of making payment or transfer of the thing in dispute to that one of the claimants which the court shall decide is entitled thereto.
"That which is meant by the statement that the existence of an independent liability will defeat the right to decree of interpleader is simply this: that if the character of any one of the respective several claims by the defendants against the complainant is such that it cannot be completely and equitably disposed of in a litigation between (or among) the defendants —if, notwithstanding whatever adjudication is made as between
(or among) the defendants, one of them may still have a rightor claim against complainant — then complainant is not entitledto decree of interpleader." (Italics mine.)
Materialmen and workmen are justified in assuming that *Page 436 
all the provisions of the filed contract will be observed.Smith v. Dodge Bliss Co., 59 N.J. Eq. 584; 44 Atl. Rep. 639;Bayonne Building Association v. Williams, 59 N.J. Eq. 617;43 Atl. Rep. 669; Meurer v. Kilgus, 77 N.J. Eq. 175;75 Atl. Rep. 899; Stevens v. Robinson, 94 N.J. Eq. 30; 118 Atl. Rep. 273.
In Turner v. Miller, 61 Atl. Rep. 741, the court said:
"The bill here presented should never have been filed. The disposition of the fund, about which complainant expresses doubt, is directed by the statute, a reading of which would have removed any fancied doubt."
The court further stated:
"After such notice the owner becomes liable to pay the claimant the amount set out in the notice, upon being satisfied of its correctness, unless the debtor shall notify him in writing that he has given to the claimant a written notice that he disputes the claim and requests him to establish the same by judgment. As it does not appear that the contractor ever gave any such notice, either to the claimants or the owner, the latter became bound under the statute to pay, upon being satisfied of the correctness of the claim; but a captious dissatisfaction will not justify a refusal. Reeve v. Elmendorf, 38 N.J. Law 125, 129. No want of such legal satisfaction is alleged. On the contrary, upon notice to the debtor, it is not charged he disputed the claim, and so far as the bill of complaint shows there did not exist any reason for doubt.
"* * * the duty of complainant was so clear and free from doubt that it seems to me his course in filing this bill and walking away with costs and counsel fees, taken from a sum always insufficient to meet the amounts due to the qualified claimants, would not have been countenanced, had the claimants protested. * * * The practice of filing interpleader bills in cases as free from doubt as this should be discountenanced, and counsel alert to all the attention of the court to such useless proceeding."
In the case of Vitagliano v. Tomassi, 109 N.J. Eq. 262;156 Atl. Rep. 828, involving a similar situation, the court dismissed the bill as to the stop-notice claimants, stating: *Page 437 
"* * * nor * * * do they (complainants) allege doubt exists as to the rightful parties among the stop-notice claimants to whom it is payable. None of the claims is in dispute and under thestatute they are payable in the order of their priority of whichthe bill indicates no confusion. The bill will be dismissed as to the stop-notice claimants." (Italics mine.)
See, also, Ter Knile v. Reddick, 39 Atl. Rep. 1062.
Under the circumstances, the bill will be dismissed.