IDA A. KREUTZ

*v.*

CHARLES H. CRAMER.

[Filed March 19th, 1903.]

1. A stop notice, served in accordance with the requirements of section 3 of the Mechanics' Lien act, obliges the owner of a building being erected under a filed contract, to retain for the benefit of noticing creditors any part of the contract price which may have become payable but which has not been paid to or assigned by the contractor at the time when a stop notice is served; and also all money which may thereafter come to be payable under the contract.

2. The fifth section of the supplement of 1895 to the Lien act, now section 5 of the revised Lien act of 1898 (*P. L. of 1898 p. 539*), as interpreted by the court of appeals in the case of *Slingerland* v. *Binns*, *11 Dick. Ch. Rep. 415*, does not relieve the owner from the requirement to retain moneys, part of the contract price actually in his hands, unpaid to and unassigned by the contractor, at the time a stop notice is served upon him, whether such moneys are, by the terms of the contract, due and payable or not. The purpose of section 5 is to make the owner, in case he pays an installment of the contract price in advance of the time when by the contract it comes to be due, liable to any claimant who serves a stop notice before such installment comes to be due.

3. The effect of the statute, as construed by the Slingerland decision, being to create an inchoate lien in favor of workmen and materialmen upon all installments of the contract price up to the time when, by the contract, they come to be payable, an owner noticed to retain an installment of the price remaining in his hands after it has become due, cannot pay it out relying upon reimbursing himself out of an installment yet to come due, for this would defeat the inchoate lien of workmen and materialmen in the latter installment.

On bill for interpleader, answers and proofs.

This is an interpleader bill filed by Ida L. Kreutz, an owner, who has procured a building to be erected for her under contract, &c., filed in the county clerk's office. The defendants are the contractor, one Goings, and the creditors of the contractor, who have given notices to the owner to retain the amount of

their several claims from the contract price, under the Mechanics' Lien act.

There are no disputes between the parties as to the payment by the owner of the first, second and third installments of the contract price. No notices were served until after these installments had been earned by and paid to the contractor.

It is admitted that the fourth installment came to be due and payable to the contractor on the 25th day of May, 1902, and before any stop notice was served, and that its amount was $960.

On the 27th day of May, 1902, the defendant, Charles H. Cramer, a subcontractor, served a stop notice upon the owner, Ida L. Kreutz, to retain $2,085, the amount due him for labor done and materials furnished in the erection of the building. At the time of this service of Cramer's notice, the fourth installment of $960 had matured, under the terms of the contract, but none of it has yet been paid out to or for the contractor, nor had any assignment been made of any portion of it, nor had any other stop notice been served.

Many stop notices have been served since the service of Cramer's, and, with these later stop notices, the total amount demanded from the owner, complainant, exceeds $4,000.

The owner, Ida L. Kreutz, files her bill of complaint for an interpleader decree against these conflicting claimants, tendering the above sum of $3,275.76 as the total amount rightfully payable under the contract to the noticing creditors. They appear and dispute this claim, insisting that by the service of the Cramer notice on May 27th, 1902, the owner was obliged to retain and apply the whole of the fourth installment of $960, so far as it would go, to the payment of the Cramer claim, and that the sum which she must deposit in court in order to entitle herself to file an interpleader bill must be the sum of the

| | | |
|---|---:|---:|
| Fourth installment ......................... | $960 | 00 |
| Less the payment to Risley on account of Cramer, | 17 | 80 |
| | $942 | 20 |
| And of the last installment.................... | 3,000 | 00 |
| | $3,942 | 20 |

On this contention the cause has come to a hearing between the complainant and the defendants.

The foregoing statement of the facts is a summary of the admissions made by the parties at the hearing.

*Messrs. Higbee & Endicott,* for the complainant.

*Messrs. Thompson & Cole,* for the defendant Somers Lumber Company.

*Mr. William M. Clevenger,* for the defendant Cramer.

*Mr. Robert H. Ingersoll,* for the defendant Mulock.

GREY, V. C.

This case must turn upon the construction to be given to section 3 of the Mechanics' Lien act (*Gen. Stat. p. 2073*) when considered with relation to section 5 of the amendatory act of March 14th, 1895 (*Gen. Stat. p. 2074*), both of which have been re-enacted in the revision of the Mechanics' Lien act of 1898 as sections 3 and 5 (*P. L. of 1898 p. 538*) and the decisions of the courts of this state declaring the meaning of those sections.

The issue joined in this case between the parties raises the question whether the complainant owner has in her interpleader bill tendered to the contesting claimants the full sum of money which, under the building contract and the notices served upon her, the owner was bound to hold at their disposal. If by her present suit she tenders the full sum due, she has a right to be protected against the defendants' conflicting claims, and they must contest with each other for its distribution. If, however, the complainant does not tender the full sum which, under the contract and the notices served upon her, she was bound to retain, she cannot require the defendants to interplead for the distribution among them of a less sum than is their due.

The parties are agreed as to the facts. The dispute is limited to the disposition made of the fourth installment of $960. It had come to be due to the contractor, but had not been paid to

him, and he had not in any way disposed of it. The owner still had the whole of it in his hands. The final payment of $3,000 had not yet come to be due.

While this was the condition of affairs, the defendant Cramer, a subcontractor, who had done work and furnished materials to the building, served a stop notice, according to the requirements of section 3 of the Mechanics' Lien act, upon the owner (the complainant) notifying her to retain for him $2,085 from the contract price.

The owner, after receiving Cramer's stop notice, paid out to the contractor, or to his order, various sums, amounting to $684.24. Shortly after, many other stop notices were served, sufficient in amount largely to exceed the total sum of the moneys remaining in the hands of the owner.

The complainant insists that when Cramer served his notice, the fourth installment of $960 had matured and was payable to the contractor or to his order, and that no stop notice served after its maturity could have any effect to oblige the owner to retain it in her hands; that she had a right to pay this matured installment to the contractor and to rely upon the final payment of $3,000 to pay Cramer.

The effect of this contention, if supported, will be to pay Cramer's claim in great part out of the last payment due under the contract and thus defeat the later noticing claimants who duly served stop notices against that payment.

In support of her contention the complainant cites the decision of the court of appeals in *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 415,* where the court declares that the effect of the enactment of section 5 of the act of 1895 was "to give to persons entitled to serve the statutory notice an inchoate lien upon the liability of the owner under the contract, until that liability matures, according to the terms of the contract, such lien to become perfect on service of the notice before the liability matures, but to expire on such maturity if no notice has been given, for a notice served after maturity derives no aid from this provision."

The complainant contends that as Cramer's notice was served after the fourth installment had matured, Cramer had no lien on that installment.

Kreutz v. Cramer.

The legislative purpose in all the legislation on this subject is not in any way in doubt. The title of the original Mechanics' Lien statute defines it with precision. It is declared to be "An act to secure to mechanics and others payment for their labor and materials in erecting any building." All amendments or supplements to the original act should be construed with relation to this declared object of the original statute, and provisions which modify the act ought not to be held to take away the security which the legislation gives to workmen and furnishers of materials, unless that purpose is clearly within the legislative expression.

Section 3 of the Lien act declares that the owner is authorized to retain the sum claimed

*"out of the amount owing by him* \* \* \* *to the contractor,* or that may thereafter become due from him to such \* \* \* contractor," &c. *Gen. Stat. p. 2073.*

Under this provision the amount owing by the owner to the contractor, at the time of the service of the stop notice (whether yet due and payable to the contractor or not), was to be retained for the noticing claimants. The court of appeals, in *Mayer* v. *Mutchler, 21 Vr. 162,* declared that the third section made it the duty of the owner, when a stop notice was served upon him, to retain from any moneys then due or which might thereafter become due to the contractor a sufficient amount to answer the notice.

In the conduct of the business, workmen and materialmen supplied work or materials to a building, relying upon their right to serve stop notices and thus have the contract price retained to secure the money due them. They were notified by the filed contract that the contract price would come to be due at certain periods in named installments. Naturally, they supposed a notice served before an installment came to be due would retain that installment. But it came about that the contractor would give orders against the installments before they were due, and the owner would accept these and pay out the installments before the period when, by the contract, they would have come to be due.

The result was a stop notice served on the owner failed to affect the part of the contract price which the owner had previously paid to the contractor before it was due or which the contractor might have assigned before the stop notice was served upon the owner. *Craig* v. *Smith, 8 Vr. 550 (Court of Appeals)*. It was declared that the workman had no lien on the contract price and that his right attached only when the notice was served, and affected the contract price as it then existed. If, when the stop notice came to the owner there was nothing owing the contractor because of previous assignment by or payment to him, the predicament contemplated by the statute did not exist, and the notice was ineffectual. *Craig* v. *Smith, supra.*

This was the state of the law previous to the statute of 1895. It worked an injustice to those who contributed labor or materials to the erection of a building, because the contractor might defeat their claims by assigning the contract price or by inducing the owner to anticipate payment before any stop notices were served, or by creating any condition before the stop notice was served, whereby, at the time it was served, the owner owed nothing on the contract price to the contractor.

This was the mischief which the supplement of 1895 was intended to remedy. That statute did not take away the right of the noticing claimant (given by the third section) to have the contract price remaining in the hands of the owner at the time of the service of the stop notice, retained for the benefit of the claimant. It gave the noticing claimant an additional security, for it declared that the owner could not in any way discharge his liability to pay under the contract, until, according to its terms, the time to do so had arrived. Until that time did arrive, the workmen and materialmen who served the statutory notice were given a lien upon the fund.

The change wrought by the supplement of 1895 as construed by the decision of *Slingerland* v. *Binns* was this: before that supplement, the claimant, relying on the terms of payment set forth in the contract, might have served his stop notice before an installment came to be payable, but if the owner had previously paid out the money to the contractor or to his order, he was not liable to the noticing claimants.

By that supplement workmen and materialmen were given an inchoate lien upon the contract price, up to the period when, by the terms of the contract, it became payable, which lien could be made complete as to any claim by service of a stop notice before the time when, by the contract, the price became payable. The lien given by the supplement was discharged by the maturing of any payment without service of such notice.

This I understand to have been the construction of the supplement of 1895, by the court of appeals, in the case of *Slingerland* v. *Binns.*

In the *Slingerland Case* the claimant had served his stop notice before the last installment had, under the contract, come to be due, and had thereby perfected the lien given him by the fifth section of the act of 1895. The owner had previously laid out, on orders from the contractor, $690.68 of this last installment. The contest was between the owner and the stop noticing claimant, on the point whether these advance payments of the contractor's orders, made previous to the service of the stop notice, should, to that extent, relieve the owner from liability for this last installment of the contract price. The court held that, as the owner had paid this money before the installment was due, he was, under the act of 1895, liable to the noticing claimant as if it had not been paid.

The court did not deal with the question of the liability of an owner who, at the time when a stop notice is served, still has in his hands a part of the contract price which has come to be due. Such money, being an "amount owing by the owner to the contractor," was liable to be noticed to be retained, under section 3 of the Lien act, before the supplement of 1895, and still remains so liable, for that supplement did not deal with that liability or change it in any way. It did not repeal section 3; on the contrary, that section was re-enacted as part of the supplement of 1895, with a slight change of phrasing not affecting the point presently under discussion. Section 3 makes any part of the contract price owing from the owner to the contractor, due or to become due, liable to a served stop notice. Section 5 of the supplement of 1895 makes the owner liable for any installment of the contract price to any claimant serving a stop notice before

the time when, by the contract, it was payable, notwithstanding the owner may have previously advanced the money. One section makes the contract price liable to notice so long as it is owing to the contractor when the notice is served. The other makes the owner liable, even if the contract price is not owing to the contractor, when notice is served, if the notice is given prior to the date when the money became payable by the contract. It is no longer a defence for the owner that he has made advance payments before the notice was served, or that the contractor had previously assigned the contract price.

In the present case the fourth installment had matured. No stop notice had been given previously to the date when it was payable. The lien referred to in the *Slingerland Case* was discharged. The money, though in the hands of the owner, was lawfully payable to the contractor. If he had collected it, or assigned it, the owner would not have been liable for having recognized the contractor's right. But the contractor did neither. The money remained in the owner's hands, part of the contract price owing to the contractor. At this stage of the business Cramer's stop notice was served, and the installment being an amount in the owner's hands part of the contract price owing to the contractor, the owner was bound to retain, under the requirements of section 3 of the Lien act. The notice served operated as an assignment, *pro tanto,* of the contract price owing by the owner to the contractor.

It is no defence for the owner to say that she relied upon the fact that the final payment of $3,000 (yet to come due when Cramer's notice was served) was large enough to satisfy Cramer's claim, and that she paid out the fourth installment to the contractor on this assumption. The owner, having the fourth installment in her hands when Cramer's stop notice was served, was charged with knowledge that the law made that payment liable to the notice, and that the final payment was subject, also, to inchoate liens, which any workman or materialman might make complete, at any time before that payment came to be due, by serving his notice. The owner had no right to shift the burden of paying Cramer's claim from the fourth to the last installment, and thus defeat the liens of these claimants who

might afterwards effectually notice her to retain the last install-
ment for their benefit. The principle applies that where A has
a lien upon two funds, and B has a lien only upon one of them,
B may (other equities not being superior) compel A to look first
to that fund on which B has no lien.

A careful examination of the supplement of 1895, and of the
decisions of the court of appeals which deal with that statute,
will show that section 5 of that act was not intended to discharge
any part of the contract price which remained in the hands of
the owner unpaid to, and not assigned by, the contractor at the
time a stop notice was served.

In *Bayonne* v. *Williams, 14 Dick. Ch. Rep. 620,* the court of
appeals, referring to the fifth section of the act of 1895, declares
"all that the supplement effects is that the contractor shall not,
by assignment, nor the owner by a premature payment, defeat a
duly-served notice; the express provision is that 'such owner or
owners shall be liable *in the same manner* as if no such payment
had been made.' " In *Smith* v. *Dodge, Bliss & Co., 14 Dick. Ch.
Rep. 586,* the same court construes the act of 1895 as applicable
to prevent advance payment and secret arrangements between the
owner and contractor, whereby the contract price might not be
owing to the contractor when stop notices were served. Mr. Jus-
tice Pitney, speaking for the court of appeals, in the case of
*Taylor* v. *Reed, 52 Atl. Rep. 582 (June Term, 1902),* after citing
the above cases, declares:

"Upon the whole, it seems well settled that while a claimant
who serves his stop notice after the owner's liability to the con-
tractor has matured still has the benefit of his notice, so far as
it entitled him to stand in the shoes of the contractor and recover
from the owner any moneys then due from the owner to the con-
tractor, to the extent of the claimant's demand, yet such a belated
stop notice has no retroactive effect, and does not entitle the
claimant to any benefit of the provisions of section 5 of the act."

In the present case Cramer, the stop noticing claimant, does
not ask the benefit of the provisions of section 5 of the act. He
stands, as above shown, upon the provisions of section 3, and
seeks to make the owner liable, not because the owner had made
advance payments, but because, when his notice was served, the

owner had the contractor's money (part of the contract price) still in her hands.

The result is that the complainant owner ought to hold at the disposal of the contesting claimants the sum of $942.20, which is the whole of the fourth installment, except the $17.80 paid to Risley on Cramer's order, and also the whole of the last installment of $3,000, making a total of $3,942.20; and should, in her interpleader bill, have tendered this $3,942.20 to the defendants, as the total sum due them from the complainant.

By her bill the complainant tenders only $3,275.76. She has no equity to compel the defendants to interplead for any less sum than is rightfully payable to them.

I will advise that the complainant's bill be dismissed, with costs.