MARTIN J. MACDONNELL, complainant-appellant,

*v.*

MICHAEL J. VITILLE et al., defendants-appellees.

[Argued May 24th, 1932.   Decided October 17th, 1932.]

*Messrs. Platoff, Saperstein & Platoff* and *Mr. J. Emil Walscheid,* for the appellant.

*Mr. Ovidio C. Bianchi, Mr. Israel Greene, Messrs. McDermott, Enright & Carpenter, Mr. Frank Cozzoline, Mr. Thomas McNulty, Mr. Otto Cooper, Messrs. Wright, Vanderburgh & McCarthy, Mr. Louis F. DeForge, Hoegger, Incorporated, pro se, Mr. Dante Rivetti, Messrs. Herrigel, Lindabury & Herrigel, Mr. Louis R. Kagan, Mr. Oscar Stempler* and *Messrs. Heine & Laird,* for the appellees.

The opinion of the court was delivered by

BROGAN, J.

The instant case presents three appeals from a final decree of the court of chancery advised by Vice-Chancellor Bigelow, in which several questions are presented by the several appeals. The facts presented by the pleadings and the record in the case are as follows:

On October 13th, 1926, complainant, Martin J. MacDonnell (hereinafter called the owner), entered into a written contract with the firm, Vitelle, Kinsella and Cunhy (hereinafter called the contractor), wherein the contractor agreed to build for the complainant, as per specifications, a five-story apartment house in the township of North Bergen for the sum of $98,000. The contract and specifications were filed in the office of the clerk of Hudson county on October 14th, 1926, and the work of erecting the building undertaken and practically completed and payments made as the work progressed, up to a time when a dozen or more stop-notices were filed under the Mechanics' Lien act by laborers and materialmen subcontractors with the owner of the building, and in many instances suits at law started against the owner by such claimants.

At this juncture of affairs the owner filed a bill of interpleader in the court of chancery making the contractor and all stop-notice claimants defendants, claiming that the entire

contract price had been paid except the sum of $3,646 due on the eighth installment payment and the sum of $11,884.68 withheld on the ninth and final payment. The bill points out that the contractor claimed $14,665.67 for extras but the owner charges this amount to be excessive and says that the fair value of extras is no more than $6,157.55. The complainant-owner also claims a credit of $12,000 because of the contractor's failure to live up to the specifications. Complainant-owner further pleads his willingness to pay the item of $3,646 mentioned above, which he admits to be due and tenders said amount into court.

The complainant also prays that all defendants, contractors and stop-notice claimants interplead so that the rights of all parties may be determined to this sum tendered into court and such other sums as may be decreed to be due from the owner after credit is allowed on his set-off. The bill also prays an accounting between the parties and that the several parties be enjoined from proceeding against the complainant as indeed some of them had already done by suits at law. The restraint was allowed conditioned upon the posting of a bond by the complainant in the amount of $30,186.35, which was done.

The answering pleadings of the contractor dispute the claim of the owner and allege compensation to be due for extras and the unpaid contract balance as well. The whole matter was then referred to a master of the court of chancery who reported to the court the amount he found due the contractor from the complainant-owner and the several amounts due to stop-notice claimants, and to this report of the master exceptions were filed by the complainant.

The court below sustained some and overruled other exceptions and found that there was due the contractor the sum of $13,862.87 and interest from October 1st, 1927, and that this sum should be distributed to the stop-notice claimants according to the priority of the claims filed so that the contractor received nothing out of the sum adjudged to be due him, as indeed some of the claimants received nothing because of the insufficiency of the amount found due.

When the vice-chancellor announced his conclusions on the exceptions filed, the solicitor of the contractor gave notice of application to settle the terms of the final decree. On the return day of that notice he presented a petition in which he invoked the provisions of the Attorneys' Lien act (*P. L. 1914 ch. 201*), to have the court provide in its decree that his fee (which was one-third of the amount recovered) be paid out of the sum found due from the owner to the contractor, which application was denied, and this applicant appeals from the denial of that petition.

The appeals therefore are as follows: (a) The owner is dissatisfied with the refusal of the allowance claimed for lack of complete performance of the contract and also with the awards made on the principal contract and the allowance made for extras. (b) The contractor appeals, claiming the allowance made the owner for deficiencies is too large and the amount allowed for extras too small. (c) The solicitor of the contractor appeals because of the refusal of the court to permit him to be paid his fee out of the fund as against stop-notice claimants.

It might be well to deal with this last appeal now since it is so strenuously argued and presents a novel question.

The Attorneys' Lien act, which is chapter 201, laws of 1914, provides: "After the service of a summons and complaint in any action at law, or the filing of a bill of complaint or petition in the court of chancery, or the service of an answer containing a counter-claim in any action at law, the attorney, solicitor or counselor-at-law, who shall appear in said cause for such party instituting the action at law, or suit, or filing the petition, or counter-claim, shall have a lien for compensation, upon his client's cause of action, suit, claim or counter-claim which shall contain and attach to a verdict, report, decision, decree, award, judgment or final order in his client's favor, and the proceeds thereof in whomsoever hands they may come; and the lien shall not be affected by any settlement between the parties before or after judgment or final order of decree. The court in which such action, suit or other proceeding is pending, upon the petition of the attor-

ney, solicitor or counselor-at-law, may determine and enforce the lien."

Now what are the facts with regard to the position of the solicitor of the general contractor? The bill of complaint was not filed *by* the general contractor but *against* him. It was filed December 7th, 1928. The stop-notices had been coming in to the owner from September 10th, 1927, to September 13th, 1928, and actions of law had been commenced on these notices several months before the bill of complaint had been filed and all of the laborers and materialmen, who will share in the amount decreed to be due the contractor, had served their stop-notices as well as begun suit in many instances prior to the date set forth in the solicitor's petition on which he was employed as counsel by the general contractor, namely, October 15th. 1928.

It was not until April 9th, 1929, that the general contractor filed answer and counter-claim. In each instance in the answer the stop-notice claimant was left to make proof of the claim, allegations being made by the contractor that it had not sufficient knowledge or information to form a belief as to the amount of the claim. The contractor further pleaded a demand for the balance of the contract price as well as extras in the amount of $14,882.80, and that suit at law had not been instituted for payment because of the promise of the owner to pay the balance due in full and by the counter-claim, demand for judgment was made in the amount of $28,742.66.

Applying technical reasoning to the solicitor's claim here under consideration we may say that his position does not come within the language of the statute (Attorneys' Lien act) because the contractor has not sued out any action at law or in equity or served an answer containing counter-claim in any action at law. The act is silent about a counter-claim in equity but even assuming that the act may be construed in favor of the solicitor's contention, that it is broad enough to make his claim attach as a lien to this fund, still under the circumstances and facts in this case there is no help for him from this fund because it belongs not to the contractor but to the laborers and materialmen who had filed timely

stop-notices with the owner. It is urged by the solicitor that this fund belongs primarily to his client and, secondarily, to those who filed stop-notice claims. We cannnot agree with this logic under the facts in this case. The owner would have no defense against the suit at law of a laborer or materialman who proved his claim and upon payment of such judgment by the owner he would have a perfect defense against the contractor up to the amount so paid, and under the facts in this· case had the owner paid the general contractor while the suits of materialmen and laborers were pending against him in a court of law he would do so at his peril.

With the proper filing of these stop-notices under the Mechanics' Lien act, for just claims, with the owner, the contractor's right to these sums so claimed is subordinated to that of the stop-notice claimants and he loses his primary right against the owner except as to the excess.

Again, it is apparent that the solicitor of the contractor was not retained until after these materialmen and laborers had served their notices and suits had been begun. This bill, it will be noted, was not filed until December 7th, 1928, and the solicitor's claim for compensation could not have arisen earlier than the time of the retention of his services, and the rights of these claimants had at that time become paramount to those of the contractor. The solicitor's claim cannot be superior to his client's under these circumstances. Further, it is plain from the record that these stop-notice claimants appeared by counsel who apparently were totally unaware at any time up to the end of the case that the contractor's solicitor expected to be paid for his services to the general contractor out of a fund which did not belong to the contractor at all, but to them.

Again, under the Mechanics' Lien act priorities of stop-notice claimants are established. Labor claimants are first paid and after them the materialmen who first file stop-notices with the owner. No proportionate payments are allowed by this statute. To argue that those who were on the tail end of the list of claimants should pay for the services of the solicitor of the contractor and those at the top of the list

escape such burden is untenable. The solicitor urges the doctrine laid down in *Brunetti* v. *Grandi, 89 N. J. Eq. 116,* as authority for his application. That case likewise was a suit in the nature of an interpleader by an owner against stop-notice claimants and others, but before the bill was filed the contractor had recovered judgment against the owner. His attorney, for the prosecution of the suit at law, claimed a lien and filed an assignment made to him of a part of the recovery. Now, in the interpleader action the attorney was made a party defendant and his claim was held good under the statute. The facts in that case compared with those in the instant case are worlds apart. In the *Brunetti Case* counsel was within the letter and spirit of the statute here invoked. In the instant case counsel is outside both the letter and the spirit of the statute.

The solicitor further contends that of the sum found due by the court below only the sum of $4,493 is due on the filed contract and the balance of more than $9,000 is for extra work outside the terms of the contract and that the stop-notice claimants have no right to the sum representing extra work and that at least his claim attaches to that sum and that therefore the stop-notice claimants should not participate in this latter amount. As to this contention suffice it to say that it is plain that the additional work was not performed extra the contract but was contemplated by the contract made by the parties and the agreement for the additional work was necessarily supplemental to the contract.

Now as to the other appeals, the appellant contractor argues that the court below erred in reducing the award made by the master to the contractors without having heard or seen the witnesses and without advancing his reasons for so doing. While we recognize of course the rule that the finding of the master is entitled to great weight and will not be disturbed unless he fall into error in matters of law or fact (*Wilson* v. *Sandall, 92 N. J. Eq. 130; Izard* v. *Bodine, 9 N. J. Eq. 309; Haulenbeck* v. *Cronkright, 23 N. J. Eq. 407; Bagley & Sewall Co.* v. *Traders Paper Board Co., 86 Atl. Rep. 1029*), yet it was the duty of the court below on the exceptions taken

to review the findings of the master from all the evidence in the case, concerning the points involved and thereupon affirm, reverse or modify these findings. *Holmes* v. *Holmes, 18 N. J. Eq. 141.*

The items in dispute, twelve in number, occupy more than eighty pages of the state of the case and in our judgment the evidence justified the action of the vice-chancellor in modifying the master's report. The appellant contractor further argues that the court below erred in not allowing costs to the successful litigant, which the contractor claimed to be. It might be mentioned here that the appellant owner likewise complained that costs were not allowed him and both complain that the compensation awarded by the court to the special master was assessed equally against them. The same reasoning applies to both contentions. It is patent that neither the owner nor the contractor was entirely successful and in its sound discretion the court was justified in denying costs to either side. It is likewise apparent that it was within the discretion of the court below to charge the master's fees, under these circumstances, to both parties in equal amounts and there was no abuse of that discretion.

Every ground of appeal argued by the appellant contractor has been disposed of with the possible exception of several points that are outlined in the petition of appeal, but these not having been argued in the brief will be presumed to have been abandoned. *Cleaves* v. *Yeskel, 104 N. J. Law 497; Cropsey* v. *Cropsey, 104 N. J. Eq. 187; Hygrade Cut Fabric Co., Inc.,* v. *United States Stores Corp., 105 N. J. Law 324.*

Now as to the appeal of the complainant-owner, that the court below erred in not sustaining the exceptions to the master's findings. That the court below was justified in modifying the master's report on the exceptions filed has already been discussed. The appellant-owner in his appeal rests mainly upon the denial to the contractor of the architect's certificate. It seems to us that the vice-chancellor was justified in finding the owner was chargeable with the amount of the unpaid balance of the contract price notwithstanding the denial of the architect's final certificate for the reason that

the entire case was tried upon the theory of substantial performance. There was plenary evidence that the building had been substantially completed. The building was occupied, had tenants in it, and while the mere occupation of the building does not of necessity mean an unconditional acceptance of it, yet, coupled with the fact that the architect testified (and it was an admission against interest, which testimony is very persuasive in character) "that the building had been substantially completed by the contractor;" "that the defects were trivial;" "that he [the architect] told him [the builder] always that he would give him a certificate;" that the architect had written, on October 21st, 1928, to the contractor, saying, "I expect to be finished with your certificate surely by Friday of this week;" that when the architect made the statement that the building was substantially completed he meant it; all of these facts pre-empt any other inference than that there was a waiver by conduct of the architect's certificate. *Sargeant Brothers, Inc.,* v. *Brancati, 107 N. J. Law 84; Bozarth* v. *Dudley, 44 N. J. Law 304; Devlan* v. *Wells, 65 N. J. Law 213.* The rule is that a condition in a building contract requiring the production of an architect's certificate as a condition precedent to payment may be waived by the owner in whose interest it is ingrafted in the contract, either by expressed words relieving the building therefrom, or the waiver may be inferred from such acts, conduct or declarations of the owners as are inconsistent with the purpose of extracting performance. *Sargeant Brothers, Inc.,* v. *Brancati, supra.*

The complainant-owner, in his bill of interpleader, admitted that the sum of $3,646 was due. Exact performance in a building of this sort is not required but substantial performance, which was the theory on which this case was tried (*Bozarth* v. *Dudley, supra*) and where there has been substantial performance which has been approved by the architect his certificate is not necessary and is waived. *Devlan* v. *Wells, supra.*

Again, it is argued by the appellant-owner that the court below erred in failing to sustain the owner's exception to the

amount of the credits allowed the master for omitted, defective, inferior, or cheaper working materials, and failing to give proper credits therefor to the owner. This objection is without merit and it seems to us that this issue was properly determined by the court below from the evidence before it. Complainant-owner further charges the court below erred in holding him chargeable with interest on the full principal balance adjudged to be due. We think that there is no merit in this argument and the interest charge imposed was proper. The owner, it will be remembered, had the use of the property and the enjoyment of the income that it brought and under the order of the court below was permitted to give bond in lieu of paying into court the amount of money represented by these claims. None of the claims presented to the owner had been paid although he was enjoying the use of the building. The stop-notice claims, comprising claims for labor and material, had not been paid and of course the contractor's claim had not been paid which brings the situation within the rule laid down in the case of *John Agnew Co.* v. *Paterson Board of Education, 83 N. J. Eq. 49,* and affirmed by this court, *Ibid. 336.*

The decree will be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.