A contract was entered into by defendant Conneen Construction Company, a corporation, and complainant, St. Michael's Orphan Asylum and Industrial School, Hopewell, New Jersey, dated April 29th, 1931, for the construction and erection of an annex to St. Michael's orphan asylum.
Conneen company on May 21st, 1931, entered into a contract with Gandelman and Espenship, Incorporated, to furnish labor and materials for stone and brick masonry, hauling and setting cut stone, lathing, plastering, including a clip-on gypsum block ceiling for the said annex. Gandelman and Espenship, Incorporated, continued with the work under this contract until October 30th, 1931, when the men working on the job were called off by a union delegate for failure to pay wages.
Conneen company advanced $1,450 to Gandelman and Espenship, Incorporated, for payroll which was insufficient and on November 3d 1931, Mr. Conneen, president of the Conneen Construction Company, paid by checks, the workmen of Gandelman and Espenship, Incorporated, the wages then due them, and Conneen Construction Company then took over the work and completed it at a total cost, including that of the work then done by Gandelman and Espenship, of $39,414.28, being $1,414.28 above the amount called for in the contract of Gandelman and Espenship. Stop-notices under the provisions of section 3 of the Mechanics' Lien act as amended (Cum. Supp. Comp. Stat. 1925, 1930 p. 949, 951) were regularly filed by defendants materialmen who had furnished material in connection with the work contemplated under the Conneen-Gandelman and Espenship contract. Notices of dispute of these claims were served and suits were brought *Page 278 
within the statutory time by all of them now interested except those who were prevented from doing so by the filing of a bill of interpleader by complainant.
The money due from the owner to the contractor to the extent of the claims of materialmen now disputed, has been paid into court pursuant to the prayer of the bill of interpleader and complainant has been discharged. The several defendants have filed statements of their respective claims against the funds. The amounts due the several claimants for materials furnished and the dates of filing of stop-notices were agreed upon and are determined as follows:
Nov. 24, 1931 Independent Brick Co. ................... $217.36
Dec. 4, 1931 DeFlesco Bros. Co., Inc. ................ 419.31
Dec. 5, 1931 A.S. Reid Brick Co. ..................... 4,033.00
Dec. 8, 1931 George B. Coursey ....................... 107.40
Dec. 8, 1931 Concrete Specialties Co. ................ 2,381.13
Dec. 14, 1931 Tattersall Co. .......................... 478.25
Jan. 28, 1932 Rednor Kline .......................... 542.66
June 13, 1932 J.B. Hill Sons ........................ 933.40

The contract entered into between Conneen Company and Gandelman and Espenship provided that Gandelman and Espenship should push the work vigorously and keep pace with all the other mechanics, and in case of delay or failure to keep pace with the other work and as required, Conneen company should have the right after five days' written notice to Gandelman and Espenship and their failure to comply therewith, to sublet all or any part of the work or furnish the material and labor and set other men to do the work and charge the cost against any balance that might be due or become due to Gandelman and Espenship on account of such contract for work done or material furnished.
There had been some complaint on the part of Conneen company about the progress of the work, and on October 26th, 1931, Conneen company wrote to Gandelman and Espenship a letter as follows:
"We have been very much discouraged and disappointed in the progress of the brick work of St. Michael's Orphanage at Hopewell, N.J., and hereby notify you that unless there are more men placed *Page 279 
on this job and same rushed to an early completion, we will be compelled to take the initiative of giving you forty-eight (48) hours' notice and will have men on the job and charge same to your account. We are sick and tired with this job being delayed."
There was no other written notice by Conneen company to Gandelman and Espenship, and Conneen company took over the work because of the failure of Gandelman and Espenship to meet the payroll. Mr. Gandelman testified that, in a conversation which he had with Mr. Conneen, Mr. Conneen had promised to give him the money to meet the payroll and that he failed to keep his promise and that on the day before the workmen were paid by Conneen, "Mr. Conneen and Mr. McCloskey said to me, I either had to raise more money and finish the job and if I can't raise it he will take it over and do his own paying, complete the job, and assume the bills I owed on that job, he said, `I will pay everything, and anything that is left he will return to Gandelman and Espenship.'"
Gandelman and Espenship worked a day or two on the job after the work had been taken over by Conneen company and then left because they were to be paid no more money as appears by the testimony of Mr. Gandelman who says that Mr. Conneen said, "if you care to work without drawing a salary, you can work, but to draw anything you won't get nothing." And on the night of November 4th, 1931, Mr. Gandelman took his tools and left.
The contract between Conneen company and Gandelman and Espenship also contained a provision as follows:
"That all materials delivered to the said premises shall be regarded as the property of said party of the first part (Conneen Construction Company) and shall not be removed without their consent."
The materials for which the claimants in this cause claim payment were all delivered for the purposes of this work and under the terms of the contract they were regarded as the property of Conneen Construction Company and such of them as were on the premises and which were delivered on the premises after Conneen company actually took charge of the work were used and taken possession of by Conneen company. *Page 280 
In this respect, at least, the case before me differs from the case of George A. Mills, c., Co. v. Hegeman-Harris Co.,94 N.J. Eq. 802, largely relied upon by the Conneen company, in which the court of errors affirmed the opinion of Vice-Chancellor Griffin in the case of Morris County Golf Club v.Hegeman-Harris Co., 121 Atl. Rep. 528. There the contractor made a subcontract with J.C. Raab Company for carpenter work. Raab abandoned the work and the same was completed by the contractor at a loss to itself of $3,000. Stop-notices were served on the owners for work done and materials furnished to Raab.
In the present case the materials furnished to Gandelman and Espenship immediately were regarded as the property of Conneen company upon their delivery upon the premises and could well be said to have been furnished to it as well as to Gandelman and Espenship. From the testimony and the circumstances surrounding the taking over of the work by Conneen company I may well conclude that Conneen company treated these materials as having been furnished for the purpose of carrying out its general contract with the owner.
Section 3 of the Mechanics' Lien act as amended (P.L. 1930 p.974), provides as follows:
"(1) Whenever any master workman or contractor or whenever any contractor under any master workman or contractor, shall upon demand, refuse to pay any person who may have furnished him material used in the erection of any such house or other building, or any subcontractor, journeyman or laborer employed by him in erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman, laborer, materialman or subcontractor to file in the office of the clerk of the county wherein such house or building is situated a notice in writing of such refusal, and of the amount due to him or them and so demanded, specifying said amount as nearly as possible, and the owner or owners of such building shall thereupon be authorized to retain the amount so due and claimed by such journeyman, laborer, materialman or subcontractor out of the amount owing by him or them on the contract or that may thereafter become due from him or them on such contract for labor or material used in the erection of such building, giving the master workman or contractor and any contractor under any master workman or contractor written notice of such notice and demand, and if the same be not paid or settled by said master workman or contractor, or such contractor under any master workman *Page 281 
or contractor, such owner or owners on being satisfied of the correctness of said demand, shall pay the same in the order in which such notices were filed in the office of the county clerk, and the receipt of such journeyman, laborer, materialman or subcontractor for the same shall entitle such owner or owners to an allowance therefor in the settlement of accounts between him and such master workman or contractor, or his representatives or assigns, as so much paid on account."
The only contract entered into in this case by St. Michael's orphan asylum so far as this controversy is concerned, was the contract with Conneen Construction Company, and the only money which could be retained by the owner under the provisions of this statute was money owing or to become owing to the Conneen company, and therefore under the facts as we have them, the claimants would be entitled to payment out of the fund now deposited in court which came from moneys due or owing to the Conneen company by St. Michael's orphan asylum.
Conneen company was under contract to do all the work and furnish all the materials in connection with this building, including the portions it sublet to Gandelman and Espenship, and it was unimportant so far as the owner was concerned by whom the actual work was done. The purpose of the statute is to secure to workmen and materialmen the moneys due them whether from the contractor or subcontractor, and clearly provides that such moneys should be paid by the owner out of moneys owing by the owner on the general contract. There was no contract between St. Michael's orphan asylum and Gandelman and Espenship, and under the terms of the contract between Conneen company and Gandelman and Espenship so far as it affects the materialmen and claimants in this case, Conneen company is liable to have deducted from moneys due it from the owner the amount of these claims. It is unthinkable that a contractor who is liable for the performance of his contract with the owner in a case where by his contract with the subcontractor he assumes title to all the property and materials delivered on the job, can avoid payment for these materials because he expends more money in the completion of the subcontractor's contract than *Page 282 
the balance due under that contract. The statute is clearly intended to protect the materialmen and have their claims paid out of moneys due by the owner to the contractor. Conneen company, the contractor in this case, saw fit, without compliance with the terms of its subcontract with Gandelman and Espenship, to take its place, use the materials furnished it under the contract, and complete the work. Conneen company was primarily bound from the beginning to do this work and every person who furnished material did so in view of this and of the possibility that Conneen company would elect to go on and complete the work.
I will advise a decree that the fund in court be distributed to the several claimants in the order in which their notices were filed, the names of which claimants, the amounts due, and the dates of filing notices are hereinbefore set forth. Any surplus in the fund should be paid to the Conneen company.
One of the claimants, Concrete Specialties Company, claimed that bricks to the amount of $179.20 were ordered by Conneen Construction Company. Reid Brick Company, another claimant, claimed that two carloads of bricks shipped to Gandelman and Espenship were actually delivered on the job after the work was taken over by Conneen Construction Company, and another claimant, DeFlesco Brothers, claimed that Conneen Construction Company guaranteed the payment of their bill for stone amounting to $419.31. These claims were all disputed by Conneen company and by agreement these matters were to be decided by me as affecting the rights of these particular claimants to have, in any event, payment for these amounts out of the fund. Having decided that their claims are payable in full out of the fund in court, I deem it unnecessary at this time to pass upon these matters. *Page 283