It has been stipulated that I decide this case on bill, answers, replications and transcript of testimony taken in open court. Final hearing was had before the late Vice-Chancellor Francis B. Davis and, prior to his death, briefs had been filed and arguments of counsel heard. I requested and have had the benefit of oral re-argument. *Page 174 
The bill here filed was in the nature of an interpleader bill. Complainant contracted with Home Development Company for the erection of a dwelling in Woodbury, Gloucester county, to cost $17,800. Contract and specifications were filed July 20th, 1937. The contractor abandoned work late in January or early in February, 1938. On January 4th, 1938, Suburban Lumber Company filed notice with the owner that it had furnished materials to the amount of $4,953.67, which sum, after demand, remained unpaid, and, on the same day, filed its stop-notice. The owner thereupon withheld payment from the contractor of the balance due under the contract, $8,012.30. Thereafter, between January 5th, 1938, and May 21st, 1938, other stop-notices were filed by laborers and materialmen on claims aggregating, approximately, $14,000.
In January, 1938, complainant took possession of his new dwelling. He has lived continuously therein all of the three years which have intervened. Nine months later, on September 16th, 1938, he filed the bill of complaint herein praying that the stop-notice claimants interplead and determine their rights to a balance of $5,703.89, which he admitted was available to them. He asked that he be allowed to retain from the balance of $8,012.30, the sum of $1,308.41 already expended by him to complete the contract, and "not more than the sum of $1,000," as necessary to be expended to remedy poor workmanship and materials furnished by the contractor. As to this latter item he asked leave to have it approved by arbitration in law. He also asked that proceedings, by claimants, be stayed until judgment on arbitration was given, and tendered himself as willing to pay into this court the balance due.
Complainant testified that there was "much, much delay" in the arbitration matter. Judgment was not had therein until March 15th, 1940. Thereafter this cause was brought on for final hearing, not at the instance of the complainant but at the instance of one of the defendants, Suburban Lumber Company.
Complainant is a member of the bar of this state. When this matter came on for final hearing before Vice-Chancellor Davis, more than two years after the filing of the bill of complaint, it was found that a decree pro confesso had not *Page 175 
been entered as to the non-answering defendants. The Vice-Chancellor offered to make the decree. Upon re-argument before me, two years and four months after the filing of the bill, the decree pro confesso had still not been entered and complainant's counsel asked for a further delay to make proof of non-military service, which proof would not have been necessary had the decree been entered in due course prior to the enactment of the Soldiers' and Sailors' Civil Relief act of 1940.
Defendants, laborers and materialmen, have now waited more than three years for payment of their undisputed claims. They ask that complainant pay interest on the amount he alleged in his bill would be due them and which, it is agreed, is due. He resists this claim.
Complainant took the initiative in the matter of litigation, seeking relief in equity against a possible multiplicity of suits by laborers and materialmen in the law courts. Those laborers and materialmen, from the moment they contributed to the erection of complainant's home, had obtained an inchoate lien upon his liability to the contractor. Donnelly v. Johnes (Court ofChancery), 58 N.J. Eq. 442; 44 Atl. Rep. 180; Slingerland v.Binns (Court of Errors and Appeals), 56 N.J. Eq. 413.
When stop-notices were served in accordance with the requirements of the statute, the owner was obliged to retain, for the benefit of noticing creditors, all money which might thereafter come to be payable under the contract. Mayer v.Mutchler (Court of Errors and Appeals), 50 N.J. Law 162. A stop-notice, served, operates as an assignment pro tanto of the contract price owing by the owner to the contractor. R.S.2:60-117; Kreutz v. Cramer (Court of Chancery), 64 N.J. Eq. 648; 54 Atl. Rep. 535.
The balance of the contract price, as of the time the contract was abandoned, was $8,012.30. Complainant then expended $1,308.41 to complete the building and claimed that it would be necessary to expend, in addition, not more than $1,000 to make good inferior workmanship and materials. The claim of an owner, who completes a building, to an unexpended balance of the contract, is superior to that of *Page 176 
stop-notice claims. Post v. Geldziler (Court of Errors andAppeals), 105 N.J. Law 370; 145 Atl. Rep. 323. As to the balance of $5,703.89, which complainant admitted to be due laborers and materialmen, an offer of tender into court was made in the bill of complaint but the money has never been paid over.
When a stop-notice has been served and money becomes due under the contract from the owner to the general contractor sufficient to pay that claim, the statute is mandatory that the owner pay the stop-notice claimant on being satisfied of the correctness of the demand. R.S. 2:60-119; Ford v. Roman Catholic Church ofOur Lady of Mt. Carmel, 9 N.J. Mis. R. 505; 154 Atl. Rep. 403.
So continuing, the owner must pay in the order in which notices have been filed, R.S. 2:60-119, for stop-notices operate in succession and in the order of time of service, R.S. 2:60-119.Donnelly v. Johnes, supra. The owner is protected if he so pays. R.S. 2:60-120; St. Michael's Orphan Asylum, c., Hopewell
v. Conneen Construction Co. (Court of Chancery), 114 N.J. Eq. 276; 166 Atl. Rep. 458; affirmed, 115 N.J. Eq. 334;170 Atl. Rep. 649.
Complainant has not contested any claim filed; in fact, he admits every claim to be correct in amount and to be justly due. He paid the claims of four laborers upon receipt of stop-notices from them and took assignments of their claims. He could have paid $5,703.89 to other claimants or into court. Instead, he retained the money and has had the benefit of holding that fund ever since. While he testified that he had the money in a separate account, he did not testify that he had not used any part thereof, that he had not received interest thereon or that retention of the money had not provided him with ready funds for any emergency.
Complainant suggests that he should not be now charged with interest because he was required to pay interest on the money he withheld. That is immaterial. His testimony is that he obtained a mortgage commitment, the money to become available when the building was completed. When $5,703.89 became payable to stop-notice claimants he had this money. Had they been paid, to the exhaustion of the *Page 177 
fund, their money could have been used by them or would have earned interest for them. Had the fund been paid into court, it might have earned interest under R.S. 2:29-81 and Chancery rule 238.
It is clear that complainant, in justice and in equity, should pay interest on the sum of $5,703.89. At final hearing, and after considering memoranda submitted by various counsel as to the facts and the law, Vice-Chancellor Davis was also apparently so persuaded. When complainant's counsel suggested that complainant should not be charged interest, the Vice-Chancellor asked: "Why shouldn't you pay interest, not having paid the money into court?" "All you have to do is offer it, and not pay it?"
"There is no subject in the law with reference to which there is greater conflict and confusion in the cases than that of interest." Vice-Chancellor Stevenson, in a leading case on this subject, John Agnew Co. v. Paterson Board of Education
(Court of Chancery, 1914), 83 N.J. Eq. 49 (at p. 67);88 Atl. Rep. 305; affirmed, 83 N.J. Eq. 336; 90 Atl. Rep. 1135,
called attention to the above quotation and then added:
"Unless a case be found which is a conclusive authority establishing a precedent, the safest way for a court of law or equity is to decide all questions pertaining to interest according to the plainest and simplest considerations of justice and fair dealing."
At common law it has been said, there were no circumstances under which interest could be claimed as a matter of right. According to the modern view, however, there are many circumstances when interest "goes with the principal as the fruit with the tree." Interest should be allowed where the conduct of a party merits its allowance against him as for some misconduct, breach of trust, or dereliction of duty, or where the person retains funds belonging to another actually making interest thereon, it was declared in 16 Am. Eng. Encycl. (2d ed.)999. In a more recent re-statement of the law, the following appears:
"Whenever a debtor is in default for not paying money, delivering property or rendering services in pursuance of his contract, he is required to indemnify the creditor for the wrong which has been done *Page 178 
him, and a just indemnity, it has been held, although it may sometimes be more, can never be less than the specified amount of money, the value of the property or the services at the time they should have been paid or rendered, with interest from the time of the default until the obligation is discharged." 30 Am. Jur.tit. "Interest" ¶ 7.
In this state interest has been allowed, generally speaking, either by way of damages for the detention of a fund or by way of profit earned or advantage had. In re Wadskier's Will, and other cases cited, infra.
Vice-Chancellor Lane, in Hoover Steel Ball Co. v. SchaeferBall Bearing Co., 90 N.J. Eq. 515 (at p. 517);106 Atl. Rep. 471, said: "* * * in each case, the question is, what is fair in right and justice?" This principle has been generally applied in this state. Some cases are LeBranthwait v. Halsey (SupremeCourt), 9 N.J. Law 3; North Hudson County Railroad Co. v.Booraem (Court of Errors and Appeals), 28 N.J. Eq. 593 (atp. 594); Horner v. Heinecke (Court of Errors andAppeals), 86 N.J. Eq. 176 (at p. 180); 98 Atl. Rep. 393; Inre Wadskier's Will (Court of Errors and Appeals), 88 N.J. Eq. 589; 103 Atl. Rep. 188; Town of Kearny v. New Jersey SuburbanWater Co. (Court of Chancery), 110 N.J. Eq. 214; MacDonnell
v. Vitille (Court of Errors and Appeals), 111 N.J. Eq. 502;162 Atl. Rep. 738; Simon v. New Jersey Asphalt and Paving Co.
(Supreme Court), 123 N.J. Law 232; 8 Atl. Rep. 2d 256;John Agnew Co. v. Paterson Board of Education (Court ofChancery and Court of Errors and Appeals), supra.
In the Agnew Case, the Court of Errors and Appeals affirmed the decree for the reasons stated by the Vice-Chancellor. In his conclusions the Vice-Chancellor had said:
"It should be borne in mind that the whole tendency of courts of law and courts of equity, for a considerable period of time, has been to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case."
In two interpleader causes arising out of building contracts, interest was imposed upon the owners for withholding payment to stop-notice claimants. Vice-Chancellor Stevenson, *Page 179 
in John Agnew Co. v. Paterson Board of Education, supra, concluded that the city of Paterson should be charged interest on the balance of a building contract which it had not paid into court. The city had taken possession of a new high school building and used it over the period covered by the litigation. The value of such use, the Vice-Chancellor said, certainly could "safely be held to include four per cent. interest on the money which the city has not been required to pay." He pointed out that the "property, in effect, belonged to the claimants in the sense of having been created by their contributions of labor and materials, while the city had not lost the use of a dollar of its money." "I cannot distinguish," he added, "between the use by the city of a fund belonging to these claimants out of which a just claim for interest would arise, and the use of this property into which the use of the money of the claimants has gone. To give the city the free use of the school building while the claimants lose all interest on their money, possibly may be supported by a technical line of reasoning based on ancient and conflicting authorities, but, in my judgment, to permit this to be done would be inconsistent with the broad principles of justice which at the start I stated would be controlling in this case." The Court of Errors and Appeals, without comment, affirmed the decree.
In MacDonnell v. Vitille, supra, the Court of Errors and Appeals affirmed a decree of Vice-Chancellor Bigelow. The bill admitted a balance due and, as in the present matter, there was a claim for extras and a claim for credit because of the contractor's failure to live up to the specifications. As here, the owner made tender of the amount he admitted to be due into court, but the money was not deposited. The Vice-Chancellor imposed interest on the full principal balance. Complainant contended that this was improper. The Court of Errors and Appeals said: "We think that there is no merit in this argument and the interest charge imposed was proper. The owner, it will be remembered, had the use of the property and the enjoyment of the income that it brought and, under the order of the court below, was permitted to give bond in lieu of paying into court the amount of money represented by these claims. None of the claims presented *Page 180 
to the owner had been paid although he was enjoying the use of the building."
From what date and at what rate should interest be charged against the complainant? The rate of interest to be imposed for the detention of a fund or by way of profit earned or advantage had seemed to have been definitely fixed in this state by the Court of Errors and Appeals in reversing a decree of Vice-Chancellor Leaming in 1917. In re Wadskier's Will, supra.
The Vice-Chancellor, applying equitable principles, had charged an executor with five per cent. interest on the amount of a legacy not paid when legally due: "It cannot be reasonably assumed that that amount of money, safely invested, would have produced more than five per cent. interest in the hands of the legatee; it seems to follow that a charge against the executor of six per cent. interest cannot be sustained on either the theory of damage actually suffered by the legatee or a penalty for misconduct of the executor." (Opinion unreported.) The Court of Errors and Appeals said: "The rule declaring the rate of interest recoverable has been settled by this court. * * * Where interest is given by way of damages, for the detention of a debt, the general rule is that the legal rate is recoverable. * * * Such is the rule to be applied in this state."
Subsequently, in MacDonnell v. Vitille, supra, the Court of Errors and Appeals affirmed a decree imposing four per cent. interest. Vice-Chancellor Bigelow had followed the same reasoning as Vice-Chancellor Leaming. This reasoning was affirmed without comment.
In the instant case, there is no proof whatever as to the present value of safely invested money and even if there were such proof, I am persuaded that it is just and proper that complainant should pay the legal rate of interest, six per cent. on the fund retained, $5,703.89.
From what date should such interest be charged? Complainant maintains that he has never been in a position to pay money into court because there has always been a substantial dispute as to the balance due from him. The facts already recited are a complete answer to this contention. The exact amount complainant fixed in his bill of complaint as *Page 181 
the amount he should pay, has now been determined to be due. The credit he asked for completion of the work had been fixed in amount before the bill was filed; defendants have merely agreed thereto. The maximum amount necessary to be expended, to make good deficiencies in workmanship and materials, was fixed by complainant in his bill; that amount was merely confirmed by arbitration. Had he paid into this court the minimum amount he admitted he would owe, that sum would have earned interest, and principal and interest would now be available for distribution.
The building contract provided that the owner should pay to the contractor, each month, eighty-five per cent. of the value of all labor and materials furnished, until the total of such payments equalled the sum of $10,000. The contract price was $17,800. This was increased by $212.30 for extras. When the contract was abandoned by the contractor, $10,000 had been paid. The contract provided that the balance should be paid to the contractor within thirty days after completion of the work. Complainant completed the work and reference to the exhibits demonstrates that final payment was made May 20th, 1938. On June 20th, 1938, stop-notice claims matured against the owner and the mandatory provision ofR.S. 2:60-119 obligated him to pay the same in the order in which notices had been filed. Ford v. Roman Catholic Church ofOur Lady of Mt. Carmel, supra. Complainant chose not to pay and, from that moment, each claimant was in a position to bring suit and obtain a judgment at law for the amount of his claim with legal interest. Interest should be paid, therefore, from June 20th, 1938.
Now, as to priorities of labor claimants. At final hearing it was established and conceded by the parties that the following claims, assigned to complainant, were entitled to priority in payment under section 6 of the Mechanics' Lien act, R.S.2:60-125:
Albert Hunt, filed January 5th, 1938, for $63.
Martin Schramm, filed January 5th, 1938, for $66.
John Tally, filed January 5th, 1938, for $61.60.
Robert Barracliffe, filed January 5th, 1938, for $60. *Page 182 
Four claimants contend that they are also entitled to priority in payment by reason of the provisions of R.S. 2:60-125, it being their contention that their claims, in whole or in part, represent labor performed on the project. They maintain that they are entitled to such priority, irrespective of the time of the filing of the stop-notices and irrespective of the fact that such notices were filed by and in the name of the assignee.
Ernest N. Mitchell filed a stop-notice January 12th, 1938, claiming a total of $122.10 for labor and materials. At final hearing he proved that he personally had performed labor to a value of $64 and had taken by assignment a claim of $26.10 for labor performed by another. The balance of $32 represented materials he furnished. The only objection made to this claim is as to the assigned portion, $26.10, he, rather than his assignor, having filed the stop-notice.
Greene Stairbuilding Co., Inc., filed a stop-notice in the name of the corporation, on March 11th, 1938, for $142.40; it was for labor only. Admittedly, it held assignments of labor claims by men who had worked on this project. This claim, like the assigned labor claim of Ernest N. Mitchell, is challenged on the theory that a stop-notice, on a labor claim, is of no effect unless filed by the person who performed the labor.
Vincent Fiorentino filed a stop-notice on January 7th, 1938, claiming $492 for labor and materials. At final hearing he proved that $381.80, of this amount, represented labor performed on the building; he held the claim by assignment. Like objection is made to this claim. No objection is made to his claim for $110.20, as a materialman.
Arthur Jacobs filed a stop-notice on February 14th, 1938, claiming $95 for labor and materials. At final hearing he did not appear and no proof was made as to what portion of this amount, if any, had been expended for labor. For failure of such proof, objection is made to this entire claim.
What are the rights of these four claimants to priority under the statute? All parties admit that the labor represented in these claims was performed and that the amounts claimed for such labor are just. It is also admitted that stop-notices *Page 183 
were given as to each of these claims. The only objection made is that the stop-notices were not given by the laborers but were given by and in the name of their assignees; it is argued that right to priority was thus lost.
This specific inquiry appears to have been considered in but one reported opinion in this state, West Jersey HomeopathicHospital v. Gibbs, 103 N.J. Eq. 262, also an interpleader action. A casualty company was there forced to complete a contract; it paid laborers and took assignments of their rights. Stop-notices were given in the name of the assignee. Vice-Chancellor Leaming's reasoning exactly applies here:
"It thus appears that even though a laborer or materialman might be said to enjoy by the terms of the third section of the act, standing alone, no interest in the nature of a property right prior to making demand and giving notice, yet by force of the fifth section in connection with the third an interest in the nature of a property right is clearly bestowed upon him prior to that time. That present subsisting property interest in the nature of an inchoate lien, must be regarded as adequate to remove the right from that class of rights sometimes deemed unassignable because devoid of actual or potential relation to property.
"It may be further suggested that an examination of the conflicting views entertained in the numerous cases to which reference is made by the text writers already referred to, strongly impels the acceptance of the more modern view that many distinctions have been made between personal and property rights in determining their assignability that appear more artificial than substantial, and that no satisfactory reason appears to exist why one who has the statutory right to consummate a lien may not assign that right to the purchaser of his claim."
The labor claims, therefore, of Ernest N. Mitchell, to the extent of $90.10; Vincent Fiorentino, to the extent of $381.80; and Greene Stairbuilding Co., Inc., to the extent of $142.40, have priority over claims of materialmen. R.S. 2:60-125. *Page 184 
The claims for materials furnished by Ernest N. Mitchell, to the extent of $32 and Vincent Fiorentino, to the extent of $110.20 take priority as such according to date of filing stop-notices.
The claim of Arthur Jacobs, not having been properly proven, is not entitled to priority. Conway v. Cron (Court ofChancery), 14 N.J. Mis. R. 479; 185 Atl. Rep. 657.
Stop-notices were filed by Samuel Ricks, Daniel P. Sweigart, Inc., E.P. Henry Son and Hajoca Corporation; these claims were all abandoned before or at final hearing.
The general contractor, Home Development, and the following claimants are barred by the decree pro confesso which has now been entered: Charles J. Reilly, Lumber Millwork Company of Philadelphia, Harry Creamer, G.C. Gommell, Standard Wall Covering Co., Inc., and A.M. White Son, Inc.
Other claims were for labor or materials furnished and their priorities are not in dispute. A decree will, therefore, be advised in accordance with these finds. Claims are to be paid in order of priority as hereinafter stated and to the exhaustion of the fund of $5,703.89. In addition, complainant is to pay interest, on each claim so paid out of the fund, from June 20th, 1938, at six per cent. per annum:
Labor claims
Horace G. Brown, assignee of Albert Hunt, filed 1-5-38, for $63.
Horace G. Brown, assignee of Martin Schramm, filed 1-5-38, for $66.
Horace G. Brown, assignee of John Tally, filed 1-5-38, for $61.60.
Horace G. Brown, assignee of Robert Barracliffe, filed 1-5-38, for $60.
Steven Simpson, filed 1-6-38, at 1:45 P.M., for $188.40.
Carmen DeLuca, filed 1-6-38, at 1:45 P.M., for $200.40.
Benjamin Gill, Jr., filed 1-7-38, at 8:50 A.M., for $188.40.
Vincent Fiorentino, filed 1-7-38, at 3:00 P.M., for $381.80.
Ernest N. Mitchell, filed 1-12-38, for $90.10.
Hugh A. Rafferty, filed 2-11-38, at 8:30 A.M., for $50.
Albert Hunt, filed 2-11-38, at 3:55 P.M., for $27. *Page 185 
Greene Stairbuilding Co., Inc., assignee, filed 3-11-38, for $117.60.
Material claims
Suburban Lumber Company, filed 1-4-38, for $4,953.67.
William S. Holmes, Inc., filed 1-5-38, at 12:45 P.M., for $213.21.
Strathmann Sand and Gravel Co., filed 1-5-38, at 2:00 P.M., for $302.84.
Camden Iron Service, filed 1-6-38, for $220.
Antrim Hardware, filed 1-6-38, for $419.
Vincent Fiorentino, filed 1-7-38, for $110.20.
Ernest N. Mitchell, filed 1-12-38, for $32.
Steel Wire Company, filed 2-15-38, for $125.60. *Page 186